ZANZON v. WHITTAKER.

1. Physicians and Surgeons—Malpractice—Reduction of Fracture—Question of Judgment.
   In action against physician for alleged malpractice in open reduction of transverse comminuted fracture of plaintiff's right humerus, finding of trial judge that it was largely a question of judgment of the operating surgeon whether he would use beef bone screws, ivory screws, or steel screws was supported by record.

2. Same—Malpractice—Expert Testimony—Cross-Examination.
   In malpractice action against physician who treated transverse comminuted fracture of plaintiff's right humerus, contention that while plaintiff had not produced any expert witnesses in support of his claim of malpractice yet he had developed sufficient testimony to present a question for the jury on cross-examination of defendant's expert witnesses held, not sustained under record presented.

3. Same—Malpractice—Reduction of Fracture—Expert Testimony—Broken Steel Drill.
   In action against physician for malpractice in treatment and open reduction of transverse comminuted fracture of plaintiff's right humerus, where plaintiff charged a lack of the exercise of good judgment and professional skill in leaving the broken portion of a steel drill in plaintiff's arm in lieu of an ivory screw, but failed to support such claim by expert testimony, recovery was properly denied as a matter of law.

Appeal from Wayne; Murphy (George B.), J. Submitted October 4, 1944. (Docket No. 55, Calendar No. 42,618.) Decided January 2, 1945. Rehearing denied February 20, 1945.

Case by Herman Zanzon against Alfred H. Whittaker for personal injuries alleged to have been

Special skill required of a physician, see 2 Restatement, Torts, § 299, comments b, d, f.

caused by the malpractice of defendant. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Clarence T. Wilson* and *Walter M. Nelson* (*George Stone*, of counsel), for plaintiff.

*Humphreys Springstun, Harold S. Knight* and *Moll, Desenberg & Purdy,* for defendant.

NORTH, J. This is a damage suit for malpractice. The trial court, at the conclusion of all the proofs, directed a verdict in favor of defendant. Plaintiff has appealed.

Plaintiff suffered a transverse comminuted fracture of the humerus of his right arm. He went to a physician who hospitalized plaintiff and attempted to set the fractured bone. The physician's effort was unsuccessful, and twice within a period of 4 days thereafter this physician reset the fractured bone. On the following day, March 12, 1935, plaintiff went to defendant, Doctor Whittaker, who recommended an open reduction. The next day this operation was performed at a hospital by Doctor Whittaker. The doctor kept in touch with plaintiff, and some weeks later told plaintiff there was not enough callous formation to form a union, and advised another operation with a bone graft to be taken from plaintiff's right leg. On June 19, 1935, defendant again operated on plaintiff who was then in a hospital for that purpose. Throughout the operation plaintiff was under a general anaesthetic and had no knowledge of what happened during that period.

In performing the operation of June 19th it was necessary to securely attach the graft taken from plaintiff's right tibia to the severed parts of the

broken bone in plaintiff's arm. Defendant planned to accomplish this by use of four ivory screws, two of which would be inserted above the break in the fractured humerus and two below. To insert these ivory screws and accomplish the purpose desired it was necessary that defendant should use a steel drill to bore four holes through the graft bone and into the humerus in which the screws could be set. This was accomplished as to three of the ivory screws, but in boring the fourth hole the steel drill was broken. A portion of the drill about an inch and a half long which extended through the graft bone and into the humerus was allowed to remain. In doing this, according to the testimony, defendant used his judgment in determining whether it would be better for the patient and the success of the operation to remove the broken portion of the steel drill, or to allow it to remain in the bone and serve the purpose of an ivory screw which otherwise would have been used. In this connection it should be noted that the undisputed testimony of expert witnesses produced in the case is that for the purpose of fixation of a graft bone to an injured member other means than ivory screws are used, and that such practice is deemed proper. Sometimes beef bone plugs are used for screws, and sometimes steel fasteners similar to staples, nails or screws are used. We think the record by uncontradicted evidence sustains the trial judge, who stated: "It is a question largely of the judgment of the operating surgeon what he would use—whether he would use beef bone screws, ivory screws or steel screws."

After the June 19th operation plaintiff continued under defendant's care. Plaintiff testified such care continued until the spring of 1940. Defendant from time to time dressed the injured member and applied different types of slings or casts to hold the arm in

place. Plaintiff suffered from pain, and by December following the operation a small sinus had developed from which pus was discharged, and which apparently had been discharging for a short time. Later this discharging sinus became somewhat larger. Plaintiff testified the opening became about the size of a dime. He also testified that in the fall of 1936 defendant suggested another open reduction operation, but such operation was not performed.

In September, 1940, pus having continued to exude intermittently from the sinus and the arm being swollen and painful, the plaintiff when taking a bath felt something sharp sticking out at the site of the sinus. With a pair of tweezers he removed the discovered object and found it to be the piece of the broken steel drill. In the following December one of the ivory screws also came out from the site of the incision. Soon thereafter the condition of plaintiff's arm improved in that the pus drainage gradually subsided and after some weeks entirely ceased. Full normal use of the arm has not been restored. There is testimony that the type of injury plaintiff suffered is difficult of successful treatment. At the time of the trial plaintiff could move his elbow and had some function of the fingers, et cetera. However his control of his fingers was impaired and he could not operate a typewriter as he had been able to do prior to the injury. Nor could plaintiff use his right arm in doing anything that required normal physical strength.

In brief the theory upon which plaintiff seeks to recover damages is that defendant negligently failed to secure a union of the parts of the broken bone at the time he first operated on plaintiff and that following this first operation defendant was guilty "of the negligence and carelessness and the inadequate treatment and after-care of plaintiff," and sub-

stantially the same claim is made as to lack of care after the operation of June 19, 1935, and plaintiff also alleges that in performing this latter operation defendant was guilty of negligence in leaving in defendant's arm in the manner and under the circumstances hereinbefore noted the portion of the drill that was broken in performing the operation and also the ivory or bone screw which later came out of plaintiff's arm and further that this latter operation was so negligently performed by defendant that "the fragments of his right humerus have joined and knit in an angulated and overlapping position and condition" resulting in plaintiff's arm being permanently shortened and being otherwise impaired, and further that the alleged negligence of defendant has greatly impaired plaintiff's general health and physical condition.

At the close of plaintiff's proofs defendant made a motion for a directed verdict, and this motion was renewed at the close of defendant's proofs. It was not until the close of all the proofs that the trial court granted the motion. As one of the reasons in support of defendant's motion for directed verdict, it was urged by defendant's counsel that there was no competent testimony in support of plaintiff's claim that defendant by leaving the piece of broken drill in plaintiff's arm (which plaintiff claimed caused infection) was guilty of malpractice. That the issue was as above noted clearly appears from the following record made late in the trial:

"*The Court:* In other words, you don't claim that the doctor is guilty of poor practice except in that one regard, and from that presence of the broken drill, everything else followed.

"*Mr. Nelson:* That's right. I couldn't make it any clearer if I talked a week about it."

In opposition to the motion for a directed verdict, plaintiff's counsel made two contentions. (1) That while plaintiff had not produced any expert witnesses in support of his claim of malpractice, still on cross-examination of defendant's expert witnesses plaintiff had developed sufficient testimony in support of his claim to give rise to an issue for determination by the jury. After having given careful consideration to the whole record, we are unable to agree with this contention. (2) That notwithstanding plaintiff's failure to sustain his claim of malpractice on the part of defendant by the testimony of any expert witnesses, plaintiff was entitled to go to the jury on the record made by plaintiff's own testimony. In support of this position plaintiff's counsel, among other cases, relies upon our decisions in *Ballance* v. *Dunnington,* 241 Mich. 383 (57 A. L. R. 262), and *LeFaive* v. *Asselin,* 262 Mich. 443. The purport of these decisions and other like decisions cited in appellant's brief is disclosed by the syllabus in the *LeFaive Case,* which reads:

"In action for malpractice, based on surgeon's failure to remove needle after performing operation for appendicitis, it was not necessary for plaintiff to show by expert witnesses that it was not good practice to sew up incision without removing needle."

Both in this and in other jurisdictions authority will be found in support of the proposition that under certain circumstances, such as disclose to the mind of the layman failure to perform professional duty properly, there may be recovery in malpractice cases notwithstanding no expert testimony is produced in support of plaintiff's claim. We think these holdings constitute an exception to the general rule that malpractice may ordinarily be proven only

by the testimony of those skilled in the particular field in which the malpractice is charged to have occurred. Our review of the instant record brings the conclusion that this case does not fall within the exception to the general rule. While plaintiff charges lack of proper care on the part of defendant and a lack of the exercise of good judgment and professional skill in leaving the broken portion of the drill in plaintiff's arm, plaintiff did not offer in support of these claims any expert testimony such as is required in cases of this character; nor, as we have noted, do we find any such testimony developed on cross-examination of defendant's expert witnesses. Clearly the question of defendant's having given proper care and attention to plaintiff at any time after defendant's services to plaintiff first began presented an issue requiring expert testimony. And, likewise, whether defendant in using his judgment in leaving the broken piece of the drill in plaintiff's arm to serve in lieu of an ivory screw to hold the bone splint in place was such a breach of defendant's professional duty to plaintiff as under the circumstances constituted malpractice could be determined only from expert testimony. *Rubenstein* v. *Purcell,* 276 Mich. 433; *Perri* v. *Tassie,* 293 Mich. 464.

But in this record there is no competent testimony of lack of proper care; and each of several experts as defendant's witnesses testified in substance that defendant's use of his judgment in leaving the broken piece of drill in plaintiff's arm to serve in lieu of an ivory screw was, under the circumstances, in accordance with the usual and ordinary practice of physicians and surgeons in the community skilled in the art of bone surgery. On this phase of the case in response to a question of the above purport Doctor Carl Badgley, an orthopedic surgeon and a

professor of surgery in the University of Michigan Medical School, testified:

"My answer to that would be, it rests entirely on the judgment of the doctor. My answer is, it was a practice which is the custom and one which is good, which was followed."

Since the phase of this appeal just above considered is controlling, we need not pass upon the correctness of defendant's contention that plaintiff's cause of action was barred by the statute of limitations. The trial judge was correct in directing a verdict for defendant. Judgment is affirmed, with costs to appellee.

STARR, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.