## GIACOBAZZI v. FETZER.

1. WITNESSES—DEFENDANT—CROSS-EXAMINATION.

A civil defendant has no protection against subjecting himself to liability by his testimony, and if his testimony will provide facts which will aid the court in arriving at a just decision, he has the duty to testify.

2. SAME — DEFENDANT — CROSS-EXAMINATION — ESTABLISHING PLAINTIFF'S CASE—STATUTES.

Statute permitting opposite party to be called for cross-examination permits plaintiff to make out his case from cross-examination of defendant, if he can (CLS 1961, § 600.2161).

3. SAME—EXPERT—DEFENDANT—CROSS-EXAMINATION—STATUTES.

Plaintiff in medical malpractice action *held*, to have the right to call defendant doctors for cross-examination under the statute and establish her case in chief by their expert testimony (CLS 1961, § 600.2161).

4. SAME—EXPERT—QUALIFICATIONS—OPINION—OSTEOPATH.

Expert medical witness who testified that he was not familiar with standards and procedures of osteopathic school of medicine was not competent to express opinion on whether defendant osteopathic physicians and surgeons had exercised proper degree of skill in performing surgical operation.

5. SAME — EXPERT — OPINION — QUALIFICATIONS — SURGERY — OSTEOPATH.

Expert medical witness who testified that he had no knowledge of standards and procedures of osteopathic school of medicine could not be rendered competent to express opinion on behalf

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses §§ 44, 45.
[2] 58 Am Jur, Witnesses §§ 560, 610.
[3] 58 Am Jur, Witnesses §§ 560, 610, 844.
[4–6] 58 Am Jur, Witnesses §§ 838, 844; 20 Am Jur, Evidence §§ 780, 784–787.
[7] 41 Am Jur, Pleading §§ 288, 291–294, 299, 301, 309.

of plaintiff, as to whether proper degree of care and skill was exercised by defendant osteopaths in performing surgical operation, by testimony of defendant osteopath that surgical procedures in the particular operation were basically the same for osteopaths and medical doctors.

6. SAME — EXPERT — OPINION — QUALIFICATIONS — SURGERY — OSTEOPATHS.

Medical witness was not qualified to answer question as to when, in his opinion, an opening in plaintiff's bladder occurred in the course of hysterectomy and subsequent surgery performed by osteopathic surgeons, when he had testified that he had no knowledge of standards or procedures of osteopathic school of medicine, because to allow such opinion would in effect allow him to give an opinion indirectly as to the standard of care and skill exercised by osteopaths in performing surgery, if his answer were that the hole in the bladder originated soon after surgery.

7. PLEADING—AMENDMENT—DISCRETION.

Trial court did not abuse its discretion in permitting defendant to amend answer to deny allegation of complaint admitted in answer as filed, when one of defendants at trial denied the fact alleged, and trial court permitted amendment to conform to testimony with opportunity afforded plaintiff to prove fact at defendant's expense under court rule (GCR 1963, 111.6).

Appeal from Wayne; Piggins (Edward S.), J. Submitted Division 1 October 5, 1966, at Detroit. (Docket Nos. 1,025, 1,419.) Decided March 28, 1967. Rehearing denied April 28, 1967. Leave to appeal denied July 7, 1967. See 379 Mich 771.

Declaration by Elizabeth K. Dark against John A. Fetzer and Joseph Donald Sheets for malpractice in performance of surgery. Derivative action by Vincent Dark against same defendants, continued by Elizabeth K. Dark as special administratrix upon death of Vincent Dark. Directed verdict and judgment for defendants. Plaintiff appeals. Catherine H. Giacobazzi substituted as plaintiff in each action upon death of Elizabeth K. Dark. Reversed and remanded for new trial.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr,* for defendants.

J. H. GILLIS, J. This malpractice action was brought against Dr. John Fetzer and Dr. Joseph Donald Sheets, osteopathic physicians, by Elizabeth K. Dark and Vincent Dark, her husband.[1]

In the early part of March, 1960, plaintiff, Elizabeth K. Dark, consulted Dr. John Fetzer in his professional capacity as an osteopathic physician. Plaintiff had previously received treatment from another physician for cancer of the cervix and upon examination, defendant Fetzer found it necessary to perform a "radical Wertheim hysterectomy." This operation was performed on March 7, 1960, and resulted in the successful removal of a malignant tumor. However, during this operation the left ureter was inadvertently injured, which defendant attempted to repair during the surgery. Following this surgery, catheters were inserted to drain the urine from the kidney externally and upon their removal, there was an irregular drainage of urine.

Defendant, Dr. Sheets, who was Dr. Fetzer's partner, was called into the case on April 5, 1960. Plaintiff was discharged from the hospital and was to return when the infection and inflammation had ceased. On July 24, 1960, plaintiff was readmitted to the hospital and underwent an intravenous urogram on July 25, 1960. On July 27, 1960, the defendants performed a bilateral ureter transplant and also attempted to repair an opening found at the base of the bladder. The latter operation failed to

---

[1] Plaintiff, Elizabeth K. Dark, continued the action of her husband as special administratrix of his estate. Subsequent to trial she also died.

·improve plaintiff's worsening condition and plaintiff was referred by defendants to Dr. Reed Nesbit. Dr. Nesbit, a medical doctor, examined the plaintiff and subsequently performed an iliostomy rerouting the drainage from her kidney through an incision on the abdomen into a plastic bag.

At trial, plaintiff read defendants' depositions into the record and subsequently called defendants under the adverse party statute for cross-examination.[2] Plaintiff contends that testimony given by defendants conflicted with their depositions and created a factual question of negligence to be determined by the jury. Plaintiff further contends that defendants can be called under the statute, and their statements used as the necessary expert testimony to establish malpractice.

The trial court in granting defendants' motion for a directed verdict, stated:

"The statute was not intended to enable an adverse party to call an opposing party as an expert and seek to establish his side of the case by such expert evidence * * * it is contrary to the purpose and reason of that statute to allow the plaintiff to make out his case in chief by expert opinion secured from the defendant on cross-examination."

The question presented is whether in a malpractice action expert testimony may be elicited from a defendant physician called for cross-examination under the Michigan adverse party statute.

This precise issue is *res nova* before the Michigan appellate courts. At the time of the trial court's decision (May, 1965), the weight of authority prohibited a plaintiff from establishing a malpractice action through cross-examination of the defendant physician. *Marrone* v. *United States* (CA2, 1966),

---

[2] CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161).

355 F2d 238. The reasoning behind this prohibition is found in the following statement:

"Cross-examination under the rules was not designed to force a defendant into becoming plaintiff's expert witness, particularly when the plaintiff is attempting to condemn the expertise of that witness." *Ericksen* v. *Wilson* (1963), 266 Minn 401, 406 (123 NW2d 687, 691).

However, subsequent to the decision in *Ericksen, supra,* there has been a decided shift in the weight of authority. In support of its position, *Ericksen* cites two Ohio cases, one New York case, one New Jersey case and one North Dakota case.[3]

At this time the North Dakota case represents the present rule only of that State. The remaining States have abandoned their original position and now follow the more "enlightened view," which allows the defendant-doctor's testimony to be utilized as the basis for establishing malpractice. See *Oleksiw* v. *Weidener* (1965), 2 Ohio St 2d 147 (207 NE2d 375); *Rogotzki* v. *Schept* (1966), 91 NJ Super 135 (219 A2d 426); *McDermott* v. *Manhattan Eye, Ear & Throat Hospital* (1964), 15 NY2d 20 (255 NYS2d 65, 203 NE2d 469). These latter decisions can be summarized by the following:

"No question of fairness should be involved in this matter. * * * A civil defendant has no protection against subjecting himself to liability. If his testimony will provide facts which will aid the court in arriving at a just decision, he has the duty to testify. Any loss to the sporting aspect of the adversary proceedings would be outweighed by the

---

[3] *Forthofer* v. *Arnold* (1938), 60 Ohio App 436 (21 NE2d 869); *Wiley* v. *Wharton* (1941), 68 Ohio App 345 (41 NE2d 255); *Hull* v. *Plume* (1944), 131 NJL 511 (37 A2d 53); *McDermott* v. *Manhattan Eye, Ear & Throat Hospital* (1962), 16 App Div 2d 374 (228 NYS2d 143); *Hunder* v. *Rindlaub* (1931), 61 ND 389 (237 NW 915).

benefit to the judicial system." *Oleksiw* v. *Weidener, supra,* at pp 149, 150.

In *Waller* v. *Sloan* (1923), 225 Mich 600, 603–605, the Michigan Supreme Court discussed the scope and purpose of the statute:

"The purpose of the statute is to level former technical rules and to get at the facts in issue. * * * The so-called 'orthodox rule' extending the right of cross-examination to all points material to issues involved, and not limiting it to matters brought out on direct-examination, has ever prevailed in this State. * * * It must be remembered in considering cases upon the right to cross-examine that the Michigan rule does not prevail in a majority of the States. * * * It is, however, no abuse of the statutory leave, and does not at all offend justice, for a plaintiff to 'make out his case from the cross-examination of defendant.' "

An examination of the *Waller Case* leads this Court to the conclusion that the plaintiff should have been allowed to call the defendant doctors under the statute and establish her case in chief through defendants' expert testimony.

"While it may be the height of optimism to expect that such a plaintiff will gain anything by being able to call and question (as an expert) the very doctor he is suing, the decision whether or not to do so is one which rests with the plaintiff alone." *McDermott* v. *Manhattan Eye, Ear & Throat Hospital,* 15 NY2d 20, 30.

Perhaps it is also advisable to state that this decision draws no distinction, for purposes of the statute, between an expert opinion based on hypothetical facts and expert testimony based on facts within the witness' own knowledge. See annotation 88 ALR2d 1186.

As this decision necessitates a new trial, this Court is obliged to answer plaintiff's additional allegations of error.

At trial plaintiff called Dr. Nesbit, a medical doctor, as an expert witness. On direct examination the doctor testified that he had no training in osteopathic schools, never attended osteopathic lectures, and was only familiar with osteopathic standards in Detroit and similar communities by hearsay.

On cross-examination, Dr. Nesbit reaffirmed his lack of familiarity of osteopathic standards when he testified:

"Q. * * * You have no knowledge of the osteopathic school of surgery of what their teachings are with respect to any of these procedures?

"A. That's correct."

The trial court prohibited the doctor from expressing an opinion on the matter at issue. Testimony remarkably similar to that in the instant case was elicited from a medical doctor in *Bryant* v. *Biggs* (1951), 331 Mich 64. In that case the Michigan Supreme Court agreed with defendants' contention that the witness' testimony "rendered him incompetent to express an opinion on the matter at issue." *Bryant* v. *Biggs, supra,* at p 70.

Notwithstanding this finding, plaintiff contends that Dr. Nesbit was qualified to render his expert opinion since the testimony of defendant Sheets indicated that the surgical procedures involved were basically the same for osteopaths and medical doctors. However, the trial court stated that Dr. Sheets' deposition failed to establish a substantial similarity between the medical and osteopathic procedures. Even assuming that Dr. Sheets' deposition did show the required similarity between the procedures, it is clear that Dr. Nesbit's testimony in chief precludes him from giving his expert opin-

ion on whether defendants exercised the proper de-. gree of skill. Dr. Nesbit testified that he had no knowledge whatsoever of osteopathic standards. Plaintiff cannot now qualify her witness on the basis of the statements made by defendant Sheets. :

"Since there is no presumption that a witness is competent to give an opinion, it is incumbent upon the party offering the witness to show that the latter possesses the necessary learning, knowledge, skill, or practical experience to enable him to give opinion testimony." 20 Am Jur, Evidence, § 786, p 660.

Dr. Nesbit was also asked for his opinion as to when an opening in the bladder first occurred. The trial court refused to allow this question to be asked before the jury and relied on its previous ruling that the witness was not properly qualified to give such testimony. Plaintiff contends that this question did not deal with standards of practice but involved only a question of *when* a medical condition occurred.

A careful examination of this question indicates that it goes far beyond a question of diagnosis. As the trial court succinctly stated:

"What you are doing here now is to ask a doctor of medicine to render an opinion as to what happened and when it happened in connection with the diagnostic and surgical procedures employed by a doctor of another branch of the profession."

If the answer to this question was that the hole in the bladder originated soon after the surgery, it would, as stated by the trial court:

"in a sense permit his testimony directly, or at least indirectly, or by inference, to constitute an opinion by him as to the standard of practice adhered to, or not adhered to, by the defendants—namely that

they in their operational procedure left a hole in this plaintiff's bladder which they should not have done."

The trial court did not err in its refusal to permit plaintiff to do indirectly what she was prohibited from doing directly.

The plaintiff's final contention is that the trial court abused its discretion in allowing defendants to amend their pleadings. Plaintiff alleges in the complaint that defendants held themselves out as specialists. Defendants admitted this allegation in their answer but at trial defendant Fetzer denied that he represented to the plaintiff that he was a specialist. Defendants made a motion to amend the pleadings to conform with the proofs. At this point the trial court proceeded under GCR 1963, 111.6, and allowed plaintiff the opportunity to prove this fact with the defendants bearing the cost. The record fails to disclose any further offer of proof by plaintiff. No abuse of discretion has been shown and absent further proof, plaintiff's contention that defendant Fetzer held himself out as a specialist cannot be sustained.

Judgment reversed. Remanded for trial in conformance with this opinion. Costs to appellant.

Lesinski, C. J., and Holbrook, J., concurred.