## GHEZZI *v.* HOLLY

1. NEGLIGENCE—PROXIMATE CAUSE—PHYSICIANS AND SURGEONS.

   In order to recover for the negligence of a physician, plaintiff must show that such negligence was a proximate cause of the injury for which damages are sought and, as a rule, this showing is one requiring expert testimony.

2. NEGLIGENCE—FRACTURED ARM—WITNESSES—EXPERT.

   Testimony of at least one expert witness was required to substantiate plaintiff's claim that failure to immobilize his fractured arm caused traumatic arthritis of that arm's distal ulna.

3. PHYSICIANS AND SURGEONS—MALPRACTICE—EXPERT TESTIMONY.

   A plaintiff, if able, is entitled to rely exclusively upon the expert testimony of the very doctor he is suing in a malpractice action.

4. DEPOSITIONS — EVIDENCE — ADMISSION — ADMISSIBILITY — CODEFENDANTS.

   Defendant-doctor's deposition testimony concerning causation, an admission, was inadmissible as substantive evidence against codefendants, a group of radiologists, although both that doctor and the radiologists were defendants in a malpractice action and the radiologists' counsel was present when the deposition was taken (GCR 1963, 302.4).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 12] 41 Am Jur, Physicians and Surgeons §§ 129–131.
[5, 11] 23 Am Jur 2d, Depositions and Discovery § 99 *et seq.*
[6] 23 Am Jur 2d, Depositions and Discovery §§ 103, 104.
[7] 23 Am Jur 2d, Depositions and Discovery § 101.
[8, 10] 29 Am Jur 2d, Evidence § 597 *et seq.*
[9] 29 Am Jur 2d, Evidence § 658.
[13] 39 Am Jur, New Trial § 26 *et seq.*

5. DEPOSITIONS—TRIAL—COURT RULES.

The use of a deposition at trial is governed by court rules (GCR 1963, 302.4).

6. DEPOSITIONS—WITNESSES—IMPEACHMENT.

Any party is entitled to use a deposition for the purpose of impeaching the testimony of the deponent as a witness; however, before a deposition may be used for impeachment purposes the deponent must first give testimony at trial inconsistent with his testimony at deposition (GCR 1963, 302.4[1]).

7. DEPOSITIONS — WITNESSES — UNAVAILABILITY — PARTY — ADMISSION.

The general rule that a witness must be shown unavailable for testifying in court does not apply to a party's use of his party opponent's deposition for the simple reason that every statement of an opponent may be used against him as an admission without calling him (GCR 1963, 302.4[2]).

8. EVIDENCE—ADMISSION—PARTY—STATEMENTS—ADMISSIBILITY.

Statements of a party which are inconsistent with his claim in litigation are substantively admissible against that same party.

9. EVIDENCE—ADMISSIONS—CODEFENDANT.

Admissions of one defendant are not admissible in evidence against a codefendant.

10. EVIDENCE—ADMISSION—DEFINITION.

An admission is a statement elsewhere made by a present party and now offered against him as inconsistent with and contradictory of his present claim made in the pleadings or evidence.

11. DEPOSITIONS—COURT RULES—MISAPPLICATION OF RULES—TWO SUITS.

The Court of Appeals will not permit misapplication of court rules governing use of depositions merely because two actions can be tried together (GCR 1963, 302.4).

12. DAMAGES—NEGLIGENCE—EXPERT MEDICAL TESTIMONY—APPEAL AND ERROR.

Submitting a question of damages to a jury at a malpractice trial was error where the only expert medical testimony offered to substantiate plaintiff's claim was inadmissible.

13. NEW TRIAL—APPEAL AND ERROR—SIZE OF VERDICT.
New trial will be granted where an error materially affected
the size of a verdict (GCR 1963, 527.1[4]).

Appeal from Muskegon, Halford I. Streeter, J.,
presiding. Submitted Division 3 December 3, 1969,
at Grand Rapids. (Docket No. 6,194.) Decided
February 25, 1970.

Complaint by Donald Ghezzi against Leland E.
Holly, Arthur J. Joistad, Jr., Everett H. Johnston,
and Leland E. Holly, II, for medical malpractice.
Lambertus Mulder and E. J. Lauretti added as de-
fendants. Judgment against defendants Holly,
Joistad, Johnston and Holly. Judgment of no cause
of action against defendants Mulder and Lauretti.
Defendants Holly, Joistad, and Johnston appeal.
Reversed and remanded for a partial new trial lim-
ited to damages only.

*Kelman, Loria, Downing & Schneider,* for plain-
tiff.

*Kitch, Suhrheinrich & Bess,* for defendants.

Before: J. H. GILLIS, P. J., and McGREGOR and
QUINN, JJ.

J. H. GILLIS, P. J. This appeal requires interpre-
tation of a few, relatively simple words. They are
these.

"At the trial or upon the hearing of a motion or an
interlocutory proceeding, any part or all of a deposi-
tion, so far as admissible under the rules of evidence,
may be used against any party who was present or
represented at the taking of the deposition or who
had due notice thereof, in accordance with any one
of the following provisions:

"(1) Any deposition may be used by any party for the purpose of impeaching the testimony of deponent as a witness.

"(2) The deposition of a party or anyone who at the time of the transaction or occurrence out of which the action arose or at the time of taking the deposition was an officer, director, employee, or agent of any party may be used by an adverse party for any purpose." GCR 1963, 302.4.

The question presented is whether the trial court erred in allowing certain deposition testimony to be used against defendants-appellants as substantive evidence.

I

*Facts and Proceedings.*

On February 2, 1965, plaintiff commenced this medical malpractice action against a group of radiologists, defendants, Holly, Joistad, Johnston and Holly, individually and as copartners.[1] The complaint alleged that on April 1, 1964, plaintiff was sent by his employer to Holly's medical office located in Muskegon, Michigan, for radiological diagnosis of possible injury to his right arm; that an X-ray was taken which disclosed a fracture; that plaintiff, through his employer, was informed that no fracture existed; and that thereafter plaintiff, thinking he had no fracture, continued to work and sought no further medical care, although suffering pain and discomfort in his right arm. It was alleged that the standards of radiological practice in Muskegon and similar communities required that defendants inform plaintiff of the fracture after discovering its existence, and that defendants failed to exercise due care in accordance with those standards of practice.

---

[1] Defendants-appellants are hereafter collectively referred to as "Holly."

Plaintiff further claimed that the continued use of his arm aggravated the fracture, subjecting plaintiff to physical and mental pain; and that, as a result of defendants' alleged malpractice, he suffered permanent injuries to his right arm, including traumatic radio-ulnar arthritis.

Holly's answer admitted that an X-ray had been taken and that it disclosed a fracture of plaintiff's right arm. However, the allegations of malpractice were denied. Defendants denied informing plaintiff that the X-ray revealed no fracture. It was alleged that, in accordance with standard radiological practice, a report of the fracture was given to Dr. E. J. Lauretti, the plaintiff's treating physician. Defendants also denied that plaintiff had suffered any damage as a result of the alleged malpractice.

On June 4, 1965, plaintiff, pursuant to GCR 1963, 302.1, deposed Dr. Lambertus Mulder, a physician who practiced in Muskegon together with Dr. E. J. Lauretti. Mulder's testimony was taken upon oral examination, with Holly's counsel appearing on behalf of defendants. Mulder was asked whether his office had received any report of plaintiff's fracture from Holly. Mulder testified that his office had received a report from Holly's office disclosing the fracture, but he could not remember when the report was received. He also testified that he first became aware of the report on April 21, 1964. On that date, plaintiff had been sent to Mulder's office by his employer for treatment of his right arm. After reviewing the report, Mulder diagnosed plaintiff's condition as a nondisplaced fracture of the right arm's distal radial styloid. A cast was placed on plaintiff's arm by Dr. Mulder.

During the course of his deposition testimony, Dr. Mulder was also asked a lengthy hypothetical question. Plaintiff's counsel inquired of Mulder whether,

in his opinion, a failure to immobilize a non-displaced fracture of an arm's radial styloid during a three-week period of intensive use of the fractured arm could cause traumatic arthritis of the arm's distal ulna. The doctor responded that, assuming arthritis subsequently developed in the arm's wrist, "you'd have to assume that the joint had been aggravated by the prolonged period of inadequate immobilization prior to the cast application."

On October 29, 1965, plaintiff filed a motion, subsequently granted, to add Mulder and Lauretti as party defendants and to file an amended complaint. The amended complaint likewise charged Mulder and Lauretti[2] with malpractice. As against the added defendants, plaintiff claimed that they were informed on or about April 1, 1964 of the existence of the fracture, and that thereafter it was their duty to report the fracture to plaintiff or to his employer. Mulder's failure to act and resulting damage to plaintiff were also alleged. The damages claimed were the same as those alleged in the suit against Holly.

Mulder's answer denied malpractice. Mulder further denied that plaintiff had suffered any permanent injuries, including traumatic radio-ulnar arthritis, as a result of any failure to act on his part.

At trial, plaintiff called defendant Mulder as an adverse party for cross-examination. See MCLA § 600.2161 (Stat Ann 1962 Rev § 27A.2161); GCR 1963, 507.4. During the course of his testimony, Mulder acknowledged that the answers he gave in his deposition testimony were true. Thereafter, at the conclusion of his examination of Dr. Mulder, plaintiff's counsel offered Mulder's deposition in evidence, relying on "the rule which permits the use of the deposition of the opposing party." Plaintiff's

---

[2] Hereafter referred to as "Mulder,"

counsel also relied on the ground that Mulder had acknowledged at trial the truth of his deposition testimony. Holly's counsel objected and took the position that Mulder's deposition was inadmissible as against the defendant Holly. A precautionary instruction to this effect was requested by Holly's counsel, but the request was denied. The trial court reasoned: "You had notice of the deposition, you were there, and it is binding on the defendant Holly." The trial court ruled that plaintiff's counsel could use Mulder's deposition for any purpose, including its use as substantive proof as against defendant Holly. Plaintiff's counsel then read Mulder's deposition testimony to the jury, including Dr. Mulder's response to plaintiff's hypothetical question.

In due course, plaintiff's case against Holly and Mulder went to the jury. A verdict was returned against the defendants-radiologists in the amount of $20,000. As against Mulder, the jury found no cause of action. Following denial of a motion for judgment notwithstanding the verdict or for new trial, defendant Holly appeals.[3]

It is well settled that in order to recover for the negligence of a physician, plaintiff must show that such negligence was a proximate cause of the injury for which damages are sought. *Morgan* v. *Engles* (1964), 372 Mich 514, 516, and cases there cited. And, as a rule, this showing is one requiring expert testimony. See Annotation, "Proximate Cause in Malpractice Cases," 13 ALR2d 11, 22; *Farrell* v. *Haze* (1909), 157 Mich 374; *Miller* v. *Toles* (1914), 183 Mich 252. In the present case, plaintiff claimed, in part, that the failure to immobilize his fractured arm caused traumatic arthritis of the arm's distal ulna. In order to substantiate this

---

[3] Plaintiff has not appealed the judgment entered in Mulder's favor against him.

claim, the testimony of at least one expert witness was required.

This Court has held that in malpractice actions the plaintiff, if able, is entitled to rely exclusively upon the expert testimony of the very doctor he is suing. See *Giacobazzi* v. *Fetzer* (1967), 6 Mich App 308. Such is the case here, since the only testimony offered to substantiate the alleged connection between a failure to immobilize plaintiff's arm and the arthritic condition subsequently found to exist was that of Dr. Mulder given at deposition.

On appeal, defendant Holly contends that the judgment below must be reversed since plaintiff failed to prove by competent evidence any causal relationship between Holly's negligence and an injury for which damages were sought—namely, traumatic arthritis of the right arm's distal ulna. No claim is made that plaintiff failed to prove malpractice; however, defendant Holly renews his contention that, as against Holly, Mulder's deposition testimony—specifically, Dr. Mulder's response to plaintiff's hypothetical question—was inadmissible as substantive evidence. For reasons hereafter discussed, we agree.

## II

### *Use of the Mulder Deposition.*

The use of a deposition at trial is governed by the provisions of GCR 1963, 302.4. Subsection (1) of Rule 302.4, upon which plaintiff relies, entitles any party to use a deposition for the purpose of impeaching the testimony of the deponent as a witness. It is obvious, however, that prior to the use of a deposition for impeachment purposes the deponent must first give testimony at trial inconsistent with his testimony at deposition. See *Ruhala* v. *Roby* (1967), 379 Mich 102, 113. In the present case, Mulder was

never asked by plaintiff's counsel whether, in his opinion, the failure to immobilize a nondisplaced fracture of an arm's radial styloid could cause traumatic arthritis of the distal ulna. Impeachment on this issue was, therefore, impossible since Mulder had not testified, when questioned by plaintiff's counsel, concerning the alleged causal relationship. Contrary to plaintiff's contention, GCR 1963, 302.4(1) provides no basis for the introduction of that portion of the Mulder deposition suggesting that a failure to immobilize plaintiff's fractured arm might result in traumatic arthritis of the arm's distal ulna.

Nor are we persuaded that Mulder's acknowledgement at trial of the truth of his deposition testimony established a sufficient foundation for the introduction, as against Holly, of Mulder's deposition testimony concerning the alleged causal relationship. In this regard, plaintiff relies upon *Schratt* v. *Fila* (1963), 371 Mich 238. See also *Perry* v. *F. Byrd, Inc.* (1937), 280 Mich 580. In the *Schratt* case, defendant Fila, when questioned by plaintiff's counsel at trial, gave testimony in conflict with a statement made by Fila prior to trial. When confronted at trial with the prior statement, Fila admitted its truth. It was held that, once defendant Fila admitted at trial the truth of the prior *inconsistent* statement, it was admissible as substantive evidence against defendant Ziegler. We think both *Schratt* and *Byrd* are distinguishable. In the present case, nothing appears in Mulder's testimony at trial, in response to questions put to him by plaintiff's counsel, that is inconsistent with his testimony at deposition concerning the alleged causal relationship. We need only repeat that at trial plaintiff's counsel never asked Mulder whether the alleged malpractice might have caused plaintiff's present condition—traumatic arthritis of the right arm's distal ulna.

Plaintiff also contends that the Mulder deposition was admissible in evidence against Holly by virtue of subsection (2) of GCR 1963, 302.4. That subsection provides:

"The deposition of a party * * * may be used by an adverse party for any purpose."

Plaintiff constructs the following argument. Mulder was a party to this litigation; plaintiff was an adverse party. Therefore, Mulder's statement concerning causation was admissible for any purpose, *i.e.*, as substantive evidence. Furthermore, Rule 302.4 provides that any part of a deposition may be used against any party who was present at the taking of the deposition. Plaintiff concludes that, since defendant Holly was present when Mulder was deposed, Mulder's statement can be used against Holly as substantive evidence. We disagree.

In *Genesee Merchants Bank & Trust Company v. Payne* (1967), 6 Mich App 204, 207, this Court explained the use of deposition testimony under subsection (2) of Rule 302.4 as follows:

"The difference in the practices allowed in paragraphs (2) and (3) of the Rule is based on the distinction between the status of the deponent as a party *capable of making admissions affecting his cause,* or the party simply as a witness. Wigmore distinguishes the status of the deponent as well (5 Wigmore on Evidence [3d ed], § 1416, p 194):

" 'The general rule that the witness must be shown unavailable for testifying in court does not apply to a party's use of his party opponent's deposition * * * for the simple reason that *every statement of an opponent may be used against him as an admission without calling him.'* " (Emphasis supplied.)

Subsection (2), thus construed, is merely a restatement of the long recognized rule of evidence that

statements of a party which are inconsistent with his claim in litigation are substantively admissible against that same party. Accord, *Community Counselling Service, Incorporated* v. *Reilly* (CA 4, 1963), 317 F2d 239, 243. See also, 4 Wigmore, Evidence (3d ed), § 1048, p 2; 4 Moore, Federal Practice (2d ed), § 26.29, p 1653. However, it is an equally well established rule of evidence that the admissions of one defendant are not admissible in evidence against a codefendant.[4]

"By hypothesis, an admission is a statement elsewhere made by the present party and now offered against him as inconsistent with and contradictory of his present claim made in the pleadings or evidence. Who, then, is the 'party', *i.e.* the litigating person, whose admissions may thus be now turned against himself?

\*    \*    \*

"The probative process consists in contrasting the statements of the same person made now as litigant and made formerly elsewhere, and it is in that view that it becomes necessary to define the identity of the person. It follows that the statements of one who is confessedly a distinct person B do not become receivable as admissions against A merely because B is also a party. In other words, the *admissions of one coplaintiff or codefendant are not receivable against another,* merely by virtue of his position as a coparty in the litigation." 4 Wigmore, Evidence (3d ed), § 1076, pp 112, 113, 115.

See also, *Ruhala* v. *Roby, supra,* at 119.

In the present case, Mulder's testimony at deposition concerning causation was inconsistent with his position at trial. By his answer, Mulder had denied

---

[4] It should be noted that there is nothing in the record suggesting any privity of interest or agency existing between Mulder and Holly so as to make Mulder's admissions equally available as against Holly. See 4 Wigmore, Evidence (3d ed), § 1070, p 69.

any relationship between the alleged malpractice and traumatic radio-ulnar arthritis. By definition, Mulder's statement at deposition constituted an admission. That admission, however, could only be used against Mulder. It could not be employed against defendant Holly. And although Mulder was a party at the time the deposition was offered in evidence, his statement regarding causation was not, thereby, admissible against Holly. Accord, *Davis v. Sedalia Yellow Cab Company* (Mo App, 1955), 280 SW2d 869.

An express provision of Rule 302.4 supports our conclusion. That provision is as follows:

"At the trial  *  *  *  any part or all of a deposition, *so far as admissible under the rules of evidence,* may be used against any party who was present or represented at the taking of the deposition *  *  *  ." (Emphasis supplied.)

Notwithstanding Holly's presence at the taking of Mulder's deposition, Mulder's response at deposition to plaintiff's hypothetical question could not be used against Holly at trial for the reason that, as to Holly, his response was inadmissible under the rules of evidence.

Two additional reasons lead us to conclude that subsection (2) provides no basis for the use of Mulder's deposition testimony concerning causation against defendant Holly. The first is the very rationale which forbids use of the admissions of one party against a coparty.

"[O]rdinary fairness would forbid such a license; *for it would in practice permit a litigant to discredit an opponent's claim merely by joining any person as the opponent's coparty and then employing that person's statements as admissions.* It is plain, therefore, both on principle and in policy, that the state-

ments of a coparty (while usable of course against himself) are not usable as admissions against a coparty." 4 Wigmore, Evidence (3d ed), § 1076, p 115.

Likewise, were we to accept the construction of subsection (2) urged by plaintiff, we would enable a party-plaintiff to discredit his opponent's claims merely by joining as codefendant any person from whom plaintiff could obtain at deposition statements contrary to the position of the original defendant.

Furthermore, it is clear that had plaintiff brought two separate suits, as he could have, Mulder could only have been employed as a witness in the separate controversy against defendant Holly. Mulder's deposition in such a suit would be inadmissible in evidence against Holly under subsection (2), GCR 1963, 302.4, for the reason that Mulder would not be a party to that litigation. We refuse to permit misapplication of the rules governing use of depositions merely because the two suits can be tried together. *Cf. Napier* v. *Bossard* (1939), 102 F2d 467–469.

We conclude that it was error to permit the use, as substantive evidence, of Mulder's deposition testimony concerning causation against defendant Holly. As that testimony was incompetent, plaintiff's case against Holly, insofar as it alleged a causal relationship between Holly's negligence and traumatic arthritis of the distal ulna, must fail for want of proof. No other expert medical testimony was offered to substantiate the alleged relationship. It was, therefore, error for the trial court to submit the question of damages for this injury to the jury. *Fabbro* v. *Soderstrom* (1930), 252 Mich 455. See also, *Brown* v. *Arnold* (1942), 303 Mich 616, 626. Moreover, we are satisfied that the error materially affected the size of the verdict. Defendant is entitled to a new trial. GCR 1963, 527.1(4). We limit retrial to damages only, as the only error concerned

the amount of the verdict. *Trapp* v. *King* (1965), 374 Mich 608.

We refuse, as requested by defendant Holly, to reverse outright, as a review of the record reveals that plaintiff had, by competent proof, established compensable injuries suffered as a result of Holly's negligence. *Cf. Rogers* v. *Kee* (1912), 171 Mich 551. Plaintiff had alleged and there was proof in support of his claim to damages for pain and suffering. Defendant Holly's other contentions need not be considered.

The judgment is reversed and remanded to the trial court for partial new trial limited to damages only.

All concurred.