WALLACE v GARDEN CITY OSTEOPATHIC HOSPITAL

Docket No. 47863. Submitted February 11, 1981, at Detroit.—Decided November 16, 1981. Leave to appeal applied for.

Dodson Wallace, individually, and as administrator of the estate of Janice Wallace, deceased, brought an action against Garden City Osteopathic Hospital, William Silverstone, D.O., and Otterbein Dressler, D.O., alleging negligence in the diagnosis and treatment of plaintiff's decedent. The defendants moved for directed verdicts, which motions were granted, Wayne Circuit Court, William J. Giovan, J. The plaintiff appeals. *Held:*

1. The trial court properly granted Dr. Silverstone's motion. The record reveals that the plaintiff failed to show by expert testimony that any of Dr. Silverstone's alleged negligence caused, hastened, or enhanced the death of the plaintiff's decedent.

2. The trial court properly granted Dr. Dressler's motion. The record reveals that the plaintiff failed to establish by expert testimony the standard of care applicable to Dr. Dressler or a breach of any standard.

3. The trial court properly granted the hospital's motion. The record reveals that the plaintiff failed to show any agency relationship between the hospital and the tumor review board which reviewed the decedent's case. Nor did the plaintiff make a prima facie showing of agency by estoppel.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 5 Am Jur 2d, Appeal and Error § 886.
   75 Am Jur 2d, Trial § 524 *et seq.*
[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 200 *et seq.,* 348.
   75 Am Jur 2d, Trial § 524 *et seq.*
[3] 40 Am Jur 2d, Hospitals and Asylums §§ 22, 24.
   Immunity from liability for damages in tort of state or governmental unit or agency in operating hospital. 25 ALR2d 203.
[4] 30 Am Jur 2d, Evidence § 1009.
   61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 344.
[5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 200 *et seq.*

T. M. BURNS, J., concurred. He additionally would note that the trial court erred in refusing to admit a copy of the death certificate of the plaintiff's decedent into evidence for the purpose of establishing the cause of death, but that the error was harmless because the plaintiff otherwise failed to establish a prima facie case. He would note further that the trial court erred in failing to admit evidence of hospital accreditation regulations for the purpose of establishing the requisite standard of care. However, reversal is not required because the regulations would do nothing to enlighten a trier of fact as to the applicable standard of care. He would affirm.

OPINION OF THE COURT

1. APPEAL — DIRECTED VERDICTS — MEDICAL MALPRACTICE.

The Court of Appeals, in reviewing a directed verdict for a defendant in a medical malpractice action, considers the evidence in a light most favorable to the plaintiff to determine whether a prima facie case of liability is established.

2. PHYSICIANS AND SURGEONS — NEGLIGENCE — MEDICAL MALPRACTICE — BURDEN OF PROOF — DIRECTED VERDICTS.

A plaintiff in a medical malpractice action, in order to establish a prima facie case of liability which will withstand a defense motion for a directed verdict, must establish the standard of professional care due him by means of expert testimony elicited from his own or the defendant's experts and the breach of that standard by the defendant and must show by medical evidence that the physical condition for which he claims damages was caused or accelerated by the alleged negligence of the defendant.

3. HOSPITALS — AGENCY — VICARIOUS LIABILITY — NEGLIGENT PHYSICIANS — ESTOPPEL.

A hospital cannot be held liable for the actions of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients absent a showing that the patient was led to believe that the contractor would act as the agent of the hospital.

CONCURRENCE BY T. M. BURNS, J.

4. EVIDENCE — DEATH CERTIFICATES — MEDICAL MALPRACTICE — DIRECTED VERDICTS — STATUTES.

*A certified copy of a death certificate is prima facie evidence of the facts as stated in the original death certificate and may be admitted as evidence in a medical malpractice case relative to*

*the cause of the death of a decedent; however, failure by a trial court to admit such evidence does not constitute error requiring reversal where a plaintiff otherwise fails to sustain his burden of proof and the defendant's motion for a directed verdict is properly granted (MCL 333.2886; MSA 14.15[2886]).*

5. HOSPITALS — NEGLIGENCE — EVIDENCE — MEDICAL MALPRACTICE — VIOLATION OF REGULATIONS.

*A violation of regulations relative to hospital accreditation promulgated pursuant to statutory authority constitutes evidence of negligence, and evidence of such regulations is admissible in medical malpractice actions to establish a requisite standard of care; however, exclusion of such evidence does not constitute error requiring reversal where the record reveals that the regulations would do nothing to enlighten a trier of fact relative to that standard.*

*Donald M. Cutler* and *Carl M. Riseman,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Thomas M. O'Leary* and *Raymond W. Morganti),* for defendants Dr. Dressler and Garden City Osteopathic Hospital.

*Fitzgerald, Hodgman, Kazul, Rutledge, Cawthorne & King,* for defendant Dr. Silverstone.

Before: M. J. KELLY, P.J., and V. J. BRENNAN and T. M. BURNS, JJ.

V. J. BRENNAN, J. Plaintiff appeals from the trial court's grant of directed verdicts in favor of all defendants, Garden City Osteopathic Hospital, William Silverstone, and Otterbein Dressler, at the close of plaintiff's proofs.

The instant case is a medical malpractice action. Plaintiff alleged that the named defendants were negligent in failing to properly diagnose and treat cancer of the decedent's cervix. Prior to trial, plaintiff entered into settlement with two other

physicians-defendants, Dr. Auth and Dr. Walczak. These are the physicians who actually performed the surgery and post-operative care. Another physician, Dr. Simmons, was dismissed voluntarily by plaintiff. Plaintiff thereafter proceeded to trial against the remaining defendants: the hospital, Silverstone, and Dressler. At the close of plaintiff's proofs, all these defendants were granted motions for directed verdicts. Plaintiff appeals as of right.

Although a multiplicity of issues are raised on appeal by both appellant and appellees, our affirmance of the propriety of the trial court's direction of verdicts for the defendants is dispositive and, hence, we need discuss only this facet of the appeal.

On appeal from a directed verdict, the question is, considering the evidence in a light most favorable to the plaintiff, whether a prima facie case of liability is established. *Patelczyk v Olson,* 95 Mich App 281, 283; 289 NW2d 910 (1980), *Blanchard v Monical Machinery Co,* 84 Mich App 279, 282; 269 NW2d 564 (1978), *Zanzon v Whittaker,* 310 Mich 340; 17 NW2d 206 (1945).

In a medical malpractice action, subject to limited exceptions which are not herein relevant, a plaintiff is required to use expert testimony to establish the standard of professional care and a breach of that standard. *Francisco v Parchment Medical Clinic, P.C.,* 407 Mich 325; 285 NW2d 39 (1979), *Lince v Monson,* 363 Mich 135; 108 NW2d 845 (1961), *Patelczyk, supra,* 283, *Bivens v Detroit Osteopathic Hospital,* 77 Mich App 478, 488; 258 NW2d 527 (1977), *rev'd on other grounds* 403 Mich 820 (1978). The plaintiff must also show by medical evidence that the physical condition for which he claims damages was caused by the alleged negligence of the defendant. *Moore v Foster,* 96 Mich

App 317, 321; 292 NW2d 535 (1980), *rev'd on other grounds* 410 Mich 863 (1980), *Miles v Van Gelder,* 1 Mich App 522, 536; 137 NW2d 292 (1965). In Michigan, the required expert testimony may be elicited from plaintiff's own experts or from the defendant physician. *Patelczyk, supra,* 284, *Mitz v Stern,* 27 Mich App 459, 464; 183 NW2d 608 (1970), *Giacobazzi v Fetzer,* 6 Mich App 308; 149 NW2d 222 (1967), *lv den* 379 Mich 770 (1967). Absent the production of this requisite expert testimony as to the elements of medical malpractice, the plaintiff fails in its burden of establishing a prima facie case of liability for jury submission and, hence, is properly subject to a motion for directed verdict.

Applying the above principles of law, we now review the propriety of the trial court's grant of separate directed verdicts for each defendant.

We address first the trial court's grant of a directed verdict in favor of defendant Dr. Silverstone. The primary controversy centered around the question of whether Dr. Silverstone, a general practitioner, was medically obligated to do Pap smears and pelvic examinations or at least to document that they were being done when the patient told him that her gynecologist was performing such tests. The other alleged malpractice of Dr. Silverstone was his failure to discover a tumor when he did perform a Pap smear and pelvic examination on June 11, 1973.

On this record, we affirm the trial court's grant of directed verdict as to Dr. Silverstone. Assuming, *arguendo,* that Dr. Silverstone was negligent on either ground, the record is barren of any expert testimony showing that such negligence was causally related to decedent's death. In order to recover for the alleged negligence of a physician, a

plaintiff must come forth with expert testimony to substantiate the alleged relationship between the negligence and the injury. *Ghezzi v Holly,* 22 Mich App 157, 163; 177 NW2d 247 (1970). In the instant case, plaintiff failed to show by expert testimony that any of the alleged negligence of Dr. Silverstone caused, hastened, or enhanced the death of plaintiff's decedent. Absent this showing, we find no error in the trial court's grant of a directed verdict.

We next examine the prima facie case of liability as to Dr. Dressler, the pathologist who, allegedly, negligently examined and analyzed the tissue specimen sent to him after the total hysterectomy performed upon plaintiff's decedent. Plaintiff claims that had Dr. Dressler properly analyzed the tissue he would have found evidence of a more extensive cancer than originally diagnosed. As proof of this negligent analysis, plaintiff points to the fact that Dr. Dressler failed to mention in his report a uterosacral ligament which the surgeon admittedly sent to him.

The record is remarkably silent as to what standard of care is required of a pathologist who examines tissue sent to him after a total hysterectomy. None of the experts produced by plaintiff were pathologists, although all had some knowledge of the area of pathology. No expert testified as to what the proper analytical procedure of the pathologist should be. Thus, plaintiff has failed to produce sufficient evidence as to the applicable standard of care.

Further, evidence of a breach of any standard is equally absent. There is no testimony as to what Dr. Dressler did during his analysis which he should not have done or as to what Dr. Dressler did not do which he should have done. Even if it is

assumed that Dr. Dressler breached the standard of care by not including a reference in his report to the uterosacral ligament, there is no evidence to establish that this failure in any way caused or accelerated the death of plaintiff's decedent. Hence, the trial court did not err in directing a verdict for Dr. Dressler.

Plaintiff also argues that the defendant hospital was liable because, *inter alia,* a Tumor Board negligently concurred in the recommendation of Drs. Auth and Walczak that a hysterectomy and bilateral oophorectomy should be performed. The Tumor Board is a committee of physicians representing various departments of the hospital which reviews all malignancy cases. The trial court granted defendant hospital's motion for a directed verdict on the grounds that the plaintiff had failed to establish an agency relationship between the Tumor Board and the hospital or that the hospital was derivatively liable for the alleged negligent acts of the Tumor Board.

The record in the instant case is bereft of any evidence that the Tumor Board was acting as an agent of the hospital.

The testimony at the time of trial demonstrated that the professional committees, such as the Tumor Board, consist of members of the medical staff. Physicians on the medical staff are not employees of Garden City Hospital, are not paid by the hospital, and do not contract with the hospital. The medical staff physicians are subject to bylaws, rules, and regulations developed by themselves and not by the hospital. The disciplining of staff physicians is handled by the independent medical staff itself, according to rules developed by the independent medical staff. The hospital and the medical staff are separate entities. The staff doc-

tors simply use the hospital facilities to render treatment to their patients.

Given the foregoing facts, there was no evidence of an agency relationship between the hospital and the Tumor Board. The general rule is that a hospital cannot be held liable for the actions of a physician who is an independent contractor and merely uses the hospital facilities to render treatment to his patients. *Grewe v Mount Clemens General Hospital,* 404 Mich 240; 273 NW2d 429 (1978), *Heins v Synkonis,* 58 Mich App 119; 227 NW2d 247 (1975). The record of this case demonstrates that this general rule applies to the relationship between the hospital and the Tumor Board. Consequently, there is no basis for holding the hospital vicariously liable for the acts of the Tumor Board members.

Similarly, the record is fatally defective because of the absence of any evidence on which plaintiffs could postulate an "agency by estoppel". No evidence was produced that the decedent relied upon or was lead to believe that the Tumor Board would be acting as an agent of the defendant hospital. *Grewe, supra, Howard v Park,* 37 Mich App 496; 195 NW2d 39 (1972). Absent such a showing, the plaintiff failed to make a prima facie showing of agency by estoppel.

We have examined plaintiff's remaining arguments and find them to be without merit. Hence we affirm the trial court's grant of directed verdicts in favor of Dr. Silverstone, Dr. Dressler, and Garden City Osteopathic Hospital.

M. J. KELLY, P.J., concurred.

T. M. BURNS, J. *(concurring).* I concur in the opinion of Judge BRENNAN and write separately

only to comment upon two issues that were not raised in the majority opinion.

Plaintiff argues that error occurred when the trial judge ruled that the death certificate of plaintiff's decedent was inadmissible during trial for purposes of establishing the cause of death. This ruling was consistent with Michigan law as established prior to the adoption of the new Public Health Code. In *Smith v Children's Hospital of Michigan*, 33 Mich App 186, 188; 189 NW2d 753 (1971), this Court held:

> "On appeal plaintiff contends that the trial court improperly refused to admit into evidence the statement of cause of death contained in the death certificate. MCL 326.16(6); MSA 14.236(6), specifically limits the purposes for which a death certificate may be used as *prima facie* evidence to questions of identity, occurrence, time and place of death. The cause of death represents a conclusion on the part of the coroner and nothing contained in the certificate is the basis for the opinion. There was no error in the refusal to admit this evidence."

The statute referred to by this Court in the *Smith* opinion has been repealed by Michigan's new Public Health Code. See MCL 333.2881-333.2886; MSA 14.15(2881)-14.15(2886). Unlike the former statute the new Public Health Code contains no language limiting the use of a death certificate to the questions of identity, occurrence, time and place of death. MCL 333.2886; MSA 14.15(2886) provides that a certified copy of a death certificate is to be considered as prima facie evidence of the facts as stated in the original. The cause of death is a "fact" contained in a death certificate. Therefore, the trial judge erroneously excluded the death certificate from evidence in this case. Nonetheless, no error requiring reversal

has occurred because the cause of death as stated on the death certificate would not, in and of itself, supply the missing element in plaintiff's cause of action. That is, the failure to show that the alleged negligence of Dr. Silverstone caused, hastened, or enhanced the death of plaintiff's decedent. Because the trial judge properly granted defendants' motions for directed verdicts, thereby obviating a need to submit this case to the jury, a failure to admit the death certificate is harmless error only.

Plaintiff also argues that the trial judge erred in refusing to admit the rules and regulations of the American Osteopathic Association to establish the standard of care applicable to defendant Garden City Hospital. Plaintiff's proposed exhibits, 5 pages of a 96-page book entitled "The Accreditation Requirements of the AOA", purported to establish that in order for a hospital to become accredited by the AOA the hospital is required to have a Tumor Board review all malignancy cases and stage all malignancies. The trial judge held this exhibit to be inadmissible to show the standard of care for the hospital because that standard can only be established by experts.

Violation of regulations promulgated pursuant to statutory authority is evidence of negligence and evidence of those regulations is admissible in medical malpractice actions. *Duckett v North Detroit General Hospital,* 84 Mich App 426; 269 NW2d 626 (1978), *Kakligian v Henry Ford Hospital,* 48 Mich App 325; 210 NW2d 463 (1973). In *Ferguson v Gonyaw,* 64 Mich App 685; 236 NW2d 543 (1975), this Court held that in an action alleging a hospital's negligent hiring of a physician the guidelines of the AOA for checking a physician's credentials properly were used to establish the requisite standard of care. Therefore, the trial

judge erred in excluding the five-page exhibit offered by plaintiff in this case. However, the trial judge's erroneous evidentiary ruling does not require reversal.

The AOA guidelines as recited in the record do not articulate the standard of care with regard to the staging of a malignancy. Rather, they recite the fact that a malignancy must be staged and that the staging must be made a part of the patient's record. The guidelines do nothing to enlighten a trier of fact as to what the applicable standard of care is. Thus, the trial judge did not commit error requiring reversal in excluding them from evidence in this case.