BLANCHARD v MONICAL MACHINERY COMPANY

Docket No. 77-2740. Submitted March 6, 1978, at Grand Rapids.—
Decided June 20, 1978.

Robert Blanchard was injured on the job when he accidentally
tripped an unguarded foot treadle causing an air-operated
clamp to close on his thumb. The clamp was sold used to Mr.
Blanchard's employer on an "as is" basis by Monical Machin-
ery Company, having been purchased from or consigned to it by
American Store Equipment Corporation. Mr. Blanchard
brought suit against Monical for negligence and breach of
warranty. Monical filed a third-party complaint against Associ-
ated Indemnity Company, the employer's workmen's compensa-
tion insurance carrier, and American Store Equipment Corpo-
ration for contribution and indemnity on the theory that
Monical acted only as agent for American and never owned the
clamp. The Kent Circuit Court, George R. Cook, J., granted a
directed verdict and judgment of no cause of action in favor of
Monical and American on the basis of a lack of duty by
Monical to the plaintiff. Plaintiff appeals and Monical and
Associated Indemnity cross-appeal. *Held:*

1. A seller of goods owes a general common-law duty to a
user of the goods to exercise the reasonable care required of a
reasonably prudent seller under the existing circumstances and
that duty is not abrogated by the fact that the goods sold are
used goods or that they are sold "as is".

2. The question of whether a reasonably prudent seller of a
used air-operated clamp would be expected to or required to
install a safety guard on the foot treadle and/or give warning
to users that accidentally tripping the foot treadle would cause
the clamp to close is a question for submission to the jury
under a proper instruction; it is not one for determination by
the judge as a matter of law.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 849.

[2] 63 Am Jur 2d, Products Liability § 122.

[3] 53 Am Jur 2d, Products Liability § 53.

Manufacturer's or seller's duty to give warning regarding product
as affecting his liability for product-caused liability. 76 ALR2d 9.

1. Appeal and Error—Directed Verdicts—Products Liability.

   The standard of appellate review in measuring the granting of a directed verdict for a defendant in products liability cases is whether, taking the evidence in a light favorable to plaintiff, a prima facie case of liability is established.

2. Products Liability—Duty—Sellers—Used Goods—Disclaimers of Liability.

   A seller of goods owes a general common-law duty to a user of the goods to exercise the reasonable care required of a reasonably prudent seller under the existing circumstances and that duty is not abrogated by the fact that the goods sold are used goods or that they are sold "as is".

3. Products Liability—Duty—Jury Question.

   The question of whether a reasonably prudent seller of a used air-operated clamp would be expected or required to install a safety guard on the foot treadle and/or give warning to users that accidentally tripping the foot treadle would cause the clamp to close is a question for submission to the jury under a proper instruction; it is not one for determination by the judge as a matter of law.

*Dilley, Dewey & Waddell* (by *Jonathan S. Damon*), for plaintiff Blanchard.

*Rhoades, McKee & Boer* (by *Ben T. Liu*), for plaintiff Associated Indemnity Company.

*Hillman, Baxter & Hammond* (by *Joel E. Krissoff* and *Michael D. Wade*), for defendant American Store Equipment Corporation.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for defendant Monical Machinery Company.

Before: M. F. Cavanagh, P. J., and D. E. Holbrook and Beasley, JJ.

Beasley, J. On November 29, 1974, plaintiff, a 19-year-old employee of Stow Davis hired less than two weeks earlier, was injured in an industrial

mishap when he accidentally tripped an unguarded foot treadle causing an air-operated clamp to close on his thumb.

The clamp, which had been manufactured prior to 1965, was allegedly sold to Stow Davis on an "as is" basis by defendant Monical in 1974. Defendant American Store Equipment Corporation had obtained the clamp in 1965 from a Massachusetts company and sold or consigned it to defendant Monical in 1971.[1]

Plaintiff brought suit for damages against defendant Monical, claiming negligence and breach of warranty. Defendant Monical brought third-party complaints against Associated Indemnity Company, which was Stow Davis's workmen's compensation insurance carrier (Associated Indemnity was realigned as a third-party plaintiff by the trial court), and against American Store Equipment Corporation as third-party defendant for contribution and indemnity on the theory that Monical acted only as agent for American and that Monical never owned the clamp.

The case was tried before a jury; defendant Monical moved for a directed verdict after opening statements, after completion of plaintiff's case and, when the parties rested, after all proofs were offered. The trial court denied the motion the first two times, but granted it the third time, saying that, under the facts, defendant Monical owed plaintiff no duty.[2]

---

[1] Defendant Monical claimed the clamp was held by it on a consignment basis for sale at a price agreeable to American Store. Plaintiff claimed Monical "sold" the clamp to it.

[2] The court set forth its reasons as follows:

"THE COURT: * * * In this case what can we tell the jury about what duty this defendant under these facts owed this plaintiff? We have asked counsel for authorities, and all counsel say there are none directly in point. Certainly, the Court has not found any in its own limited research. In any event, we avoid the temptation to lay down

The standard of appellate review in measuring the granting of directed verdicts for defendants in product liability cases is whether, taking the evidence in a light favorable to plaintiff, a prima facie case of liability is established. If so, a motion for directed verdict should be denied. Only when all reasonable men would agree to facts which preclude liability, should a directed verdict be granted for defendant.[3] We are not convinced that there were facts in the within case on which all would so agree.

Plaintiff claims defendant seller is liable for failure to install a safety guard· on or around the foot treadle and for failure to warn users of a possible danger in accidentally tripping the foot treadle. The trial court concluded that, as a matter of law, defendant did not owe plaintiff any duty. He said to require a seller, who sells an "ancient machine", "as is", to a knowledgeable furniture company that had its own safety engineer, to install a safety guard around the foot treadle and

some new concept of law embracing all dealers in used machines. That formulation, the law wisely leaves to our appellate court. We simply say that under the facts in this case we find that this defendant owed this plaintiff no particular duty. Without duty there can be no breech [sic], and without breech [sic] there can be no legal· injury, and without injury no damages.

"The defendant in this case did all the law required of him. He sold an ancient machine to a knowledgeable, sophisticated and experienced furniture company that had its own safety department and its own safety engineer. The uncontradicted testimony is that Stow-Davis wanted the machine in an 'as is' condition, and that it would assume the responsibility of its care, maintenance and operation. To expect this defendant under these facts to put on safety equipment or warn Stow-Davis of possible dangers of the machine would be an exercise of the absurd.

"From the facts comes the law, and in our view the facts in this case require a directed verdict for the defendant and the third-party defendant. The testimony of the witnesses, MacMillen, Worsley and Logie compels this result even though we view all the testimony in the light most favorable to plaintiff. Each defendant may tax costs."

[3] *Hastings Mutual Ins Co v Croydon Homes Corp,* 73 Mich App 699; 252 NW2d 558 (1977).

to warn users of a possible danger in accidentally tripping the foot treadle, would be an exercise of the absurd. It may well be that a jury will so conclude, but under the law, it is for the jury, not the judge, to so find.

Contrary to the trial judge's conclusion, defendant seller owed a general duty to plaintiff user to exercise the reasonable care required of a reasonably prudent seller under the existing circumstances. Certainly, the age of the equipment and the condition it was in when it left defendant seller's possession would be relevant factors in the jury's determination of whether the duty owed plaintiff was breached. But, it is not the rule that, as a matter of law, used machinery dealers owe no duty to persons injured by their products.

The fact that defendant seller alleges that the clamp was merely held on consignment from American Store pending sale on a price agreeable to the latter, does not alter defendant seller's duty to the ultimate purchaser, Stow Davis and its employee, the plaintiff. Nor can we find any reason to relieve defendant seller of his duty of care merely because he is dealing in used rather than new goods. There is no indication in the Uniform Commercial Code of an intention to completely relieve a seller of used goods of his duty of care to persons affected by the use of those goods. Nor have we been able to find authority elsewhere for so doing.

Further, the designation of the sale in the within case as being on an "as is" basis, does not relieve defendant seller of his duty of care. While disclaimers are generally not favored, the Uniform Commercial Code, recognizing that they have some utility in promoting free commerce, provides for

such disclaimers in limited circumstances.[4] How-
ever, whatever the impact of the UCC warranties
and disclaimer attempted by defendant seller in
the within case, it does not result in relieving
defendant seller of his duty of care to plaintiff
under the common law. Common law tort liability
in Michigan is distinct from the warranty liabili-
ties imposed by the Uniform Commercial Code,
and may not be abrogated by the disclaimers
permitted under the code.[5]

The Michigan law of product liability was re-
cently restated by our Supreme Court in *Moning v
Alfono,*[6] where the Court stated:

"It is well established that placing a product on the
market creates the requisite relationship between a

---

[4] MCL 440.2316; MSA 19.2316.

[5] *Parish v B F Goodrich Co,* 395 Mich 271, 290; 235 NW2d 570
(1975). Discussing the effect of the UCC on common law warranties,
Justice WILLIAMS, in his dissenting opinion, stated:

"The warranty given birth by the courts extends protection well
beyond that given by the code's warranties. Not only is the require-
ment of privity inapplicable but the manufacturer may not rely on
the affirmative defenses of lack of notice, disclaimer of warranties,
limitations of remedies as he can under the code. When courts talk
about warranty based on law, not the contractual agreements, and
hold that a manufacturer may not avail himself of the defense
provided by the code, it is quite evident that they are not talking
about a warranty based upon the code."

The *Parish* majority also recognized that the product liability of a
manufacturer, not in direct dealing with the consumer, has been
imposed by the courts with little or no regard as to whether there is
an agreement between the parties and in the face of attempts by
some manufacturers to disclaim liability. The majority stated:

"While some of the concepts *(e.g.,* implied warranty) developed by
the courts in creating the consumer's right of direct action against
the manufacturer have been enacted into statute, the UCC draftsmen
have acknowledged that the consumer's remedy is not statutory, but
essentially a judicial development which the courts should be free to
develop further." 395 Mich at 280.

*See also Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 99–
100; 133 NW2d 129 (1965), *Browne v Fenestra, Inc,* 375 Mich 566, 571;
134 NW2d 730 (1965).

[6] *Moning v Alfono,* 400 Mich 425, 439; 254 NW2d 759 (1977).

manufacturer, wholesaler and retailer and persons affected by use of the product giving rise to a legal obligation or duty to the persons so affected. A manufacturer owes the consumer an obligation to avoid negligent conduct. The obligation extends to persons within the foreseeable scope of the risk." (Footnotes omitted.)

Thus, in summary, the standard of care required of defendant seller was that of a reasonably prudent seller under the existing circumstances. The ultimate question, therefore, was whether a reasonably prudent seller of a used air-operated clamp, manufactured prior to 1965, would be expected to or required to install a safety guard on the foot treadle and/or give warning to users that accidentally tripping the foot treadle would cause the clamp to close.

This question was not one for determination by the trial judge as a matter of law; on the contrary, it was a question for submission to the jury under a proper instruction. Accordingly, we hold that the trial court erred in finding that defendant seller owed no duty of care to plaintiff. The directed verdict should not have been granted.

In addition, plaintiff claims the trial court erred in denying plaintiff opportunity to offer so-called OSHA regulations in evidence.[7]

After careful consideration,[8] the trial court decided that OSHA regulations were not relevant to determination of the standard of conduct here owed by defendant to plaintiff. On appeal, the question is whether the trial court's finding that OSHA regulations were inadmissible constituted

---

[7] 1970–1971 AACS R 408.12351, 408.12353, 408.12716(3), 408.12716(4) and 408.12770. *See also,* 29 CFR 1910.212, 1910.213(b)(6), 1910.213(r)(4) and 1910.217(b)(4).

[8] The matter was briefed and argued before the trial court ruled.

an abuse of discretion.[9] Under the circumstances of this case, we decline to find that the trial court's ruling was an abuse of discretion.

Consequently, we reverse the directed verdict and remand for trial.

In so ruling, it goes without saying that we grant the relief sought by Monical Machinery Company, as cross-appellant, on its cross-appeal. If, on trial on the merits, plaintiff Robert Blanchard prevails against defendant-appellee, Monical Machinery Company, then, of course, Monical Machinery Company is entitled to adjudication of its third-party complaint against third-party defendant, American Store Equipment Company. Therefore, the directed verdict in favor of American Store Equipment Company and against Monical Machinery Company on the third-party complaint asserted by the latter against the former, is similarly reversed and the claim on the third-party complaint remanded for trial on the merits.

In conclusion, the directed verdict in favor of defendant Monical Machinery Company and against plaintiff Robert Blanchard is reversed and the case remanded for trial. Similarly, the directed verdict on the third-party complaint is reversed and that claim remanded for trial.

---

[9] *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959).