Joseph BEVARD, Plaintiff,

v.

AJAX MANUFACTURING COMPANY, Altamil Corporation, et al., Defendants.

No. 75–71640.

United States District Court, E. D. Michigan, S. D.

March 19, 1979.

James F. Logan, Detroit, Mich., for plaintiff.

James W. Bodary of Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., for defendant Altamil.

## MEMORANDUM OPINION REGARDING DEFENDANT, ALTAMIL'S MOTION FOR SUMMARY JUDGMENT

JULIAN ABELE COOK, Jr., District Judge.

This case involves a Motion for Summary Judgment made by one of multiple Defendants, Aluminum Forge Division of Altamil Corporation (hereinafter Altamil). Altamil purchased a press from Defendant, Ajax Manufacturing Company, in or around 1966, and it was used by them for approximately five years. Through a used equipment dealer, Altamil sold this press in 1971 to Plaintiff's employer, Webb Forging Company. While in the employment of Webb, and while working on the press in question, Plaintiff sustained the injury which is the subject of this lawsuit.

For the most part, the issues presented are simple and can be dealt with in a straightforward fashion, although there are some interesting twists as to the Plaintiff's negligence theory.

The Amended Complaint of September 24, 1976, ¶ ¶ 6, 7, 15, and 17, which serves as the basis for the claims against Altamil, reads as follows:

6.  That as the seller of the aforesaid product, the Defendant, Aluminum Forge Division of Altamil Corporation warranted that the same would be of merchantable quality and reasonably suited for the purposes for which it was intended and free of manufacturing defects.

7.  In selling the aforesaid product, the Defendant, Aluminum Forge Division of Altamil Corporation, was required to do so in a careful and prudent manner, and without negligence.

15.  The Defendants, and each of them, breached their aforesaid warranty of fitness for the purpose and merchantability in that the press was defective and that it activated in the off position and contained no warning signs upon it and contained no guarding of the foot treadle and contained no guarding of the pinch points on the aforesaid press, which breach of warranty proximately resulted in Plaintiff's injury.

17.  The Defendant, Aluminum Forge Division of Altamil Corporation, was negligent in the selling of the aforesaid equipment in that it activated even though it had been turned off, contained no warnings on the equip-

ment or instructions regarding how to deactivate the press before attempting to place the die block in the same and was not guarded at the pinch points and not guarded on the foot treadle.

Moving Defendant took ¶¶ 6 and 15 to be an allegation of breach of implied warranty under the Uniform Commercial Code. It would appear, from the purport of such language as "Merchantable quality" and "warranty of fitness for particular purpose and merchantability," that this was a fair reading of the Complaint. Part I of the Motion is premised on this interpretation of the Complaint. However, Plaintiff, in his responsive brief, states "[h]owever, under the law in Michigan such disclaimer are not recognized and the cause of action does not arise under the Uniform Commercial Code or the Uniform Sales Act, but is rather a common law remedy." (See Plaintiff's brief at 2–3.) In fact, the major portion of the Plaintiff's brief is devoted to showing that his is not a U.C.C. implied warranty action but rather a "common law remedy" or "product liability" action.

Michigan has yet to adopt the Restatement (Second) of Torts § 402B, which gives rise to strict liability in tort for defective chattels. Michigan law, therefore, has taken a common law approach to this field. Justice (then Judge) Levin found the codified approach to dealing with products cases as unacceptable. "These formulations [U.C.C. and the Restatement], however, no more mark the boundaries of the consumers' remedy than did the earlier effort at codification, the Uniform Sales Act." *Cova v. Harley Davidson Mtr. Co.*, 26 Mich.App. 602, 611, 182 N.W.2d 800, 805 (1970).

■ This refusal to adopt 402B does not imply that a common law cause of action, unrelated to the U.C.C. remedies, does not exist in Michigan. Ever since the announcement of *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (1965) (which abolished privity requirements in a suit against a manufacturer), a judicially created cause of action has existed and been evolving in Michigan. It has been clearly established that a lawsuit based upon such a theory is distinct from a negligence cause of action. *Id.* at 97–98, 133 N.W.2d at 135. *See also Moning v. Alfono*, 400 Mich. 425, 440 n.12, 254 N.W.2d 759, 765 n.12 (1977). This judicially created remedy appears to be something distinct from U.C.C. remedies. *Parish v. B. F. Goodrich Co.*, 395 Mich. 271, 286–91, 235 N.W.2d 570, 576–81 (1975) (Williams, J., dissenting). Justice Williams characterized this judicially created remedy as "common law warranty liability," but not without noting as Justice Levin did in *Cova*, that warranty terminology was problematic and that neutral terminology, such as "product liability," might be more advantageous. *Id.* at 288–89 n.13, 235 N.W.2d at 578. *See also Cova v. Harley Davidson Mtr. Co.*, 26 Mich. App. at 615–16 & nn.29–31, 182 N.W.2d 800.

■ Therefore, it would appear there are three potential theories of recovery in Michigan when someone sustains personal injury by means of a defective product: (1) U.C.C. warranty remedies; (2) "common law warranty" remedies; (3) negligence.

### I.

### U.C.C.

As we noted earlier, Plaintiff, in his responsive pleading, argues us that his is not a U.C.C. founded allegation although the pleadings could fairly be construed as such. We also noted that Defendant-Movant has based Part I of its Motion on the premise that breach of the implied warranty of merchantability under U.C.C. § 2–314(1), Mich. Comp.Laws Ann. § 440.2314(1) is alleged. For the sake of this Motion's full consideration, we will assume that Plaintiff's Complaint alleges a "common law warranty" theory under present Michigan law, but we will also address the U.C.C.'s relation to the claims notwithstanding Plaintiff's urging that the Code is inapplicable.

■ If we consider the Complaint's allegations under the Code, the Court would be forced to grant the Motion. The implied warranty of merchantability is one implied

only as to "merchants" as defined in U.C.C. § 2–2104(1), Mich.Comp.Laws Ann. § 440.-2104(1). An occasional, one time seller, such as the Defendant, who is not engaged in the business of selling the goods in question, or holding himself out as a person who deals in such goods, is not a "merchant."

■ In addition, it seems clear from ¶ 15 that the Complaint could fairly be interpreted to allege breach of the Code's implied warranty of fitness for a particular purpose under U.C.C. § 2–315, Mich.Comp. Laws Ann. § 440.2315. Although one need not be a "merchant" to extend this warranty to the buyer, it can be expressly disclaimed. U.C.C. § 2–316, Mich.Comp.Laws Ann. § 440.2316. As Defendant indicated, words such as "as is" or "with all faults" are adequate disclaimer of all implied warranties. *Id.* § 2–316(3)(a). However, this disclaimer must be in writing and conspicuous—*Id.* § 2–316(2)—a fact left out of the Movant's brief. Movant's discussion and affidavits regarding the "as is" nature of the agreement are, therefore, irrelevant as to disclaimer under the Code.

Nevertheless, the evidence of the "as is" nature of the transaction is useful for other purposes. The following quote from R. Anderson's work on the U.C.C. is helpful:

> With respect to a warranty of fitness for a particular purpose, there is no requirement that the seller be a merchant. As a practical matter, however, the seller will ordinarily be a merchant for the reason that the implied warranty of fitness for a particular purpose does not arise unless the buyer relies on the seller's skill and judgment and that when the facts are such as support the conclusion that the seller possesses "skill and judgment" it is more than likely that the seller will come within the description of "merchant."

1 R. Anderson, Uniform Commercial Code § 2–315: 15 (1970).

■ Anderson suggests that, in most instances, the seller will be a merchant because the warranty requires reliance on the seller's skill and judgment. He then proceeds to hypothesize the existence of a fact-pattern where the warranty applies to a non-merchant. The reliance by the buyer upon the skill and judgment of the seller is wholly lacking in our case. In fact, there was never any allegation or claim of skill or judgment on Altamil's part—the "as is" nature of the transaction conclusively establishes that. In addition, the "as is" nature of the transaction, albeit oral and inadequate for disclaimer purposes, negates the existence of any reliance by the buyer. Also, the Complaint makes no allegation of reliance.

II.

"Common Law Warranty"

or

"Product Liability"

■ By hanging his hat on this theory, Plaintiff goes from the frying pan into the fire. The principal difficulty with this lawsuit, as to this Defendant, is this Defendant's status. Altamil is only an occasional seller. It is not a manufacturer, dealer, wholesaler or retailer. It is not even in the business of reselling used presses. Rather, Altamil simply had an old press, and sold it. Purely from a policy standpoint—a policy I hasten to recognize that the Federal Courts are not free to announce—it would seem inappropriate to bring them into such a product suit. Owners of perfectly good and reuseable products will junk them rather than risk product liability for things that simply pass through their hands. This would be economic waste. Also, the rationale for product liability would not underlie holding such a Defendant liable. As Prosser says, "[w]hen a housewife, on one occasion sells a jar of jam to her neighbor, or the owner of an automobile trades it in to a dealer, the undertaking to the public and the justifiable reliance upon that undertaking on the part of the ultimate consumer, which are the basis of strict liability, are conspicuously lacking." W. Prosser, Law of Torts 664 (4th ed. 1971) [hereinafter Prosser].

Prosser also states that, "[a]s to strict liability, whether on warranty or in tort, no

case has been found in any jurisdiction in which it has been imposed upon anyone who was not engaged in the business of supplying goods of the particular kind. The Second Restatement of Torts has so limited the liability." *Id.* Neither Prosser, the Defendant-Movant nor I can find any such case in Michigan. Plaintiff suggests that the Defendant need not be a manufacturer or retailer. He cites three cases. The first, *Buckeye Union v. Detroit Edison*, 38 Mich. App. 325, 196 N.W.2d 316 (1971) deals with the application of product liability law to suppliers of electricity; the second, *Michigan Mut. Liab. Ins. v. Fruehauf*, 63 Mich. App. 109, 234 N.W.2d 172 (1975), and third, *Jones v. Keetch*, 388 Mich. 164, 200 N.W.2d 227 (1972), deal with the application of product liability law to lessors and bailors. The status of the Defendants in those cases and the status of the type of Defendant to which Prosser refers is clearly distinguishable from the status of Defendant Altamil. The supplier, lessor and bailor are all engaged in the business or enterprise of supplying, leasing, or receiving in bailment goods within the meaning of the Code. Defendant Altamil is in no way involved in the business of selling presses. The sale in question was a "one shot" affair.

As Prosser mentioned, the Restatement requires the seller to be engaged in the business of selling the allegedly defective product. Restatement (Second) of Torts § 402A(1)(a) & Comment f. Although Michigan has not adopted the Restatement position, it does carry considerable weight for the purpose of ascertaining what is the most current and "progressive" statement of the law.

Michigan has adopted a common law methodology for determining the various indicia of a product liability jurisprudence. Moreover, no Michigan case has held a Defendant liable who is not in the business of selling or dealing in the defective products. Additionally, a most influential and progressive statement of the law expressly denies liability as to such a Defendant. In view of these things, we must find that holding Defendant Altamil subject to a product liability claim would represent an extension of current law that would be inappropriate for a Federal Court to impose upon Michigan's evolving jurisprudence of product liability.

## III.

### Negligence

The claims of negligence in selling (¶ 7 of the Amended Complaint) and negligence in failing to warn of defects (¶ 17 of the Amended Complaint) present some problems. The applicability of the law of negligence in the product liability field has recently been exhaustively discussed in *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759. As to elements, it looks like any other negligence cause. There must be (1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damages. *Id.* at 437, 254 N.W.2d at 764. In *Moning*, Justice Levin deliberately and systematically distinguished between duty and standard of care or conduct; an essential distinction he felt that his dissenting colleagues did not make. " 'Duty' comprehends whether the Defendant is under *any* obligation to the Plaintiff to avoid negligent conduct; it does not include—where there is *an* obligation—the nature of the obligation: the general standard of care and specific standard of care." *Id.* at 437–38, 254 N.W.2d at 764.

The Court went on to further define duty as "essentially a question of whether the relationship between the actor and injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* at 438–39, 254 N.W.2d at 765. The Court pointed out that the confusion in duty and standard of care was what prompted the lower courts to sustain the directed verdict motion made by the manufacturer Defendants. It reiterated that the duty of manufacturers, and certain others, was unquestioned. "It is well established that placing a product on the market creates the requisite relationship between a manufacturer, wholesaler and retailer and persons affected by use of the product giving rise to a legal obligation or duty to the person so affected. A manufacturer owes the consumer an obligation to

avoid negligent conduct. The obligation extends to persons within the foreseeable scope of risk." *Id.* at 439, 254 N.W.2d at 765. Questions as to the existence of duty are for the Court alone to determine. *Id.* at 436–37 & n.14, 254 N.W.2d at 766 & n.14.

Therefore, the antecedent question that we must address is whether a Defendant, who is not a manufacturer, wholesaler, retailer, or even a used dealer in product (i. e., a party who does not make a business of dealing in or with the product), has *any* legal obligation, i. e., duty, to persons affected by use of that product.

Plaintiff does not cite any case from Michigan or any other jurisdiction which would impose a legal duty or obligation upon an occasional seller regarding the sale of a defective product or the failure to warn as to such a defective product. Plaintiff's use of *Blanchard v. Monical Mach. Co.,* 84 Mich.App. 279, 269 N.W.2d 564 (1978) is not totally apposite for such a purpose. First, the Defendant therein was a dealer in used machines and not a "one time" seller. *See id.* at 281–82 n.2, 269 N.W.2d at 565–66 n.2. Secondly, the Court presupposes the existence of a legal duty owed by Defendant, Monical, to the Plaintiff, Blanchard; to wit,

> Certainly the age of the equipment and the condition it was in when it left the Defendant seller's possession would be relevant factors in the jury's determination of whether the duty owed Plaintiff was breached. But, it is not the rule that, as a matter of law, used machinery dealers owe no duty to persons injured by their products.

*Id.* at 283, 269 N.W.2d at 566.

*Blanchard* is at the outer limits of Michigan law. The *Blanchard* trial court's belief that used dealers owed no duty to potential Plaintiffs is evidence of that. Even Prosser, who says that any seller owes "some duty to buyers and those within the foreseeable scope of risk," only specifically refers to the liability of persons somehow engaged in a business related to or connected with the product; e. g., wholesalers, retailers, used products dealers, repairmen, etc. *Prosser,* 663. Defendant Altamil's business was not related to or connected with presses. Altamil merely bought a press which was subsequently sold when its business usefulness had been exhausted.

Nevertheless, *Blanchard* can well stand for the proposition that a "legal duty" is a very broad concept. The law of negligence imposes upon all of us certain duties. If we somehow create a zone of risk or danger, then we are obligated, in law, to all those whom we could or should foresee as entering into that zone. The bond between the one owing the duty, and the one to whom the duty is owed, is often elusive. It may or may not exist at any given time between any given persons, depending upon whether a risk is or is not created by some conduct or omission. Therefore, whether the Defendant is a manufacturer, wholesaler, retailer, or one time seller is of no conclusive consequence in determining whether a duty does or does not exist. What is important in finding if a duty exists is the conduct of the actor.

We think that by selling the press, the Defendant acted such that a duty was imposed upon it. As cited earlier, Prosser does say "*any* seller does owe some duty to buyers and those within the foreseeable scope of risk." Prosser, p. 663. In *Blanchard,* the Court said:

> Contrary to the trial judge's conclusion, defendant seller owed a general duty to plaintiff user to exercise the reasonable care required of a reasonably prudent seller under the existing circumstances. Certainly, the age of the equipment and the condition it was in when it left defendant seller's possession would be relevant factors in the jury's determination of whether the duty owed plaintiff was breached. But, it is not the rule that, as a matter of law, used machinery dealers owe no duty to persons injured by their products.

*Blanchard v. Monical Mach. Co.,* 84 Mich. App. at 283, 269 N.W.2d at 566. Similarly, it is not the rule that, as a matter of law, one time sellers owe no duty to persons injured by things that they sell.

The standard of care required of the Defendant is the same as that required of the

Defendant in *Blanchard*; to wit, that of a reasonably prudent seller under similar circumstances.

Thus, in summary, the standard of care required of defendant seller was that of a reasonably prudent seller under the existing circumstances. The ultimate question, therefore, was whether a reasonably prudent seller of a used air-operated clamp, manufactured prior to 1965, would be expected to or required to install a safety guard on the foot treadle and/or give warning to users that accidentally tripping the foot treadle would cause the clamp to close.

This question was not one for determination by the trial judge as a matter of law; on the contrary, it was a question for submission to the jury under a proper instruction.

*Id.* at 285, 269 N.W.2d at 567.

Defendant Altamil's Motion for Summary Judgment is granted in part and denied in part. The Motion is granted as to the claims of the Plaintiff in Paragraphs 6 and 15 of the Amended Complaint. It is denied as to the claims of the Plaintiff in Paragraphs 7 and 17 of the Amended Complaint.