**Thomas INMAN and Linda Inman, Plaintiffs,**

v.

**HEIDELBERG EASTERN, INC. a/k/a, EAC USA, Inc., Heidelberg USA, Inc. now also known as Standby USA, Inc., a Delaware corporation; EAC USA, Inc., a/k/a QRX Corporation, a Delaware corporation; Heidelberger Druckmaschinen AG, a German corporation; Heidelberger Druckmaschinen Boos & Lauffs GmbH & Co., a German corporation; and Heidelberger Harris GmbH, a German corporation, Jointly and Severally, Defendants.**

**Civil Action No. 93–40523.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 29, 1996.

for injuries Thomas Inman sustained while operating a printing press. Before the court are motions for summary judgment filed by defendants Heidelberger Druckmaschinen AG, Heidelberg Eastern, Inc., EAC USA, Inc. and Heidelberg USA, Inc. a/k/a Standby USA.[1]

## I. Facts

Heidelberger Druckmaschinen AG is a manufacturer of printing presses in Heidelberg, Germany. In 1972, Heidelberger Druckmaschinen AG sold the Heidelberg SORDZ 36″, the press which is the subject of this action, to Heidelberg Eastern, Inc. Heidelberg Eastern, Inc. imported the press to the United States and a year later sold the press to Chemical Dynamics, a Chicago firm. In 1977, Chemical Dynamics, through Salan Corporation, sold the press to Thomson Shore.

Thomson Shore employed plaintiff Inman as a printing press operator from 1981 through 1992. In 1992, Inman spent approximately 60% of his time operating the Heidelberg SORDZ 36″ press. He had previously trained another printer in its use. On November 11, 1992, plaintiff Thomas Inman suffered injury to his hand and arm while operating the press in the course of his employment.

At the time of the accident, Inman was reaching inside the frame of the press to check the pressure on the water form roller. This operation is referred to as "checking the bounce." There is an adjustment screw (or rod) for checking the bounce on each side of the press. Apparently, Inman checked the bounce on the side of the press nearest to where he was standing and then leaned across the machine to check the bounce on the other side. He slipped and fell into an unguarded, in-running nip point, created by two rollers rotating towards each other. The accident nearly amputated his arm. Defen-

James R. Kohl, Plunkett & Cooney, Detroit, MI, for Standby USA Inc.

Margaret A. Lynch, Michael V. Kell, Kell & Lynch, Birmingham, MI, for Linda Inman.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Plaintiffs Thomas and Linda Inman filed this products liability action seeking damages

---

**1.** Defendant East Asiatic A/S also filed a motion for summary judgment. Plaintiffs filed a response concurring with defendant East Asiatic's motion. The court therefore dismissed East Asiatic from this action and entered summary judgment in favor of defendant East Asiatic.

After the motions for summary judgment had been filed, defendants filed a motion in limine to strike the testimony of Peter Barroso. Plaintiffs filed a motion to extend time to respond and/or for stay of hearing on defendants' motion in limine to strike testimony of Peter Barroso. The court will grant plaintiffs' motion and extend the time to respond to defendants' motion in limine to ten days after this order is issued.

dants argue that Inman should have walked around to the other side of the press in order to check the bounce on the other side. According to plaintiffs, Inman had never been told by Heidelberg, either in its instruction manual or anywhere else, that he had to move to the other side of the press to check the bounce.

Plaintiffs' five count second amended complaint alleges defective design, breach of implied warranty, failure to warn and/or instruct, defective manufacture, and loss of consortium. Before the court are motions for summary judgment filed by defendants Heidelberger Druckmaschinen AG, Heidelberg Eastern, EAC USA, and Heidelberg USA, a/k/a Standby USA.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'show-ing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

### A. Motion for Summary Judgment by Heidelberg Druckmaschinen

1. *Defective Design*

a. *Simple Tool*

■ Plaintiffs allege that the press was defective because defendant Heidelberger

Druckmaschinen AG ("HD") failed to install proper safety devices to protect plaintiff Inman from injury. In its motion for summary judgment, HD argues that it had no duty to make the press more safe because it was a simple tool and the danger to be avoided was open and obvious to all.

The court finds it absurd that HD is seriously attempting to argue that the printing press was a simple tool. The operation manual for the press is several inches thick and the company sends trainers to help customers learn how to use the press. However, because the issue was raised by HD, the court will explain why the press is not a simple tool.

■ The two part test for determining whether a tool is considered a simple tool under the law is: (1) the product is not highly mechanized, allowing user control; and (2) the intended use of the product does not place the user in an obviously dangerous position. *Raines v. Colt Industries,* 757 F.Supp. 819, 825 (E.D.Mich.1991). HD admits that the press is mechanized, but argues that a simple tool does not become complex merely because it is mechanized. HD spends significant effort arguing that the tool need only meet one prong of this two part test to be considered a simple tool. *Viscogliosi v. Montgomery Elevator Co.,* 208 Mich. App. 188, 526 N.W.2d 599 (1994). HD attempts to convince this court that the press meets the second prong of the test because its intended use does not place the user in an obviously dangerous position. However, HD also admitted that checking the bounce required placing the operator's hand within seven inches of an unguarded in-running nip point. The court cannot see how HD can argue that this is not dangerous.

HD cites several cases to support its contention that the press is a simple tool. Defendant relies heavily on *Viscogliosi,* in which a plaintiff tripped on the mechanized walkway at Detroit airport when stepping off the walkway. The court fails to find that a mechanized walkway is similar to the press in the instant action. Even young children know how to properly get onto and step off of a mechanized walkway. In *Fisher v. Johnson Milk Co., Inc.,* 383 Mich. 158, 174

N.W.2d 752 (1970), plaintiff fell and cut his hands when the glass bottles in his wire carrier broke. In *Glittenberg v. Doughboy (On Reh.),* 441 Mich. 379, 491 N.W.2d 208 (1992), plaintiff was injured while diving into an above-land swimming pool. In *Kirk v. Hanes,* 771 F.Supp. 856 (E.D.Mich.1992), *aff'd* 16 F.3d 705 (6th Cir.1994) a child was injured when her brother set fire to her shirt with a disposable lighter. In *Adams v. Perry,* 198 Mich.App. 1, 497 N.W.2d 514 (1993), *lv. app. den'd,* 405 Mich. 901 (1993), the court held that a butane lighter was a simple tool. Clearly, none of these products are similar in complexity to the printing press in the instant action. If a large printing press which requires trainers and thick manuals in order to be operated is a simple tool, then almost every product on the market would have to be a simple tool.

■ HD also argues that the danger of the press was open and obvious and therefore HD did not need to make the press more safe. In *Kirk v. Hanes,* 16 F.3d 705 (6th Cir.1994), the court explained that under Michigan law, manufacturers of simple tools do not have any duty to warn or protect against dangers which are obvious to all. *Id.* (quoting *Fisher,* 383 Mich. 158, 174 N.W.2d 752 (1970)). The Sixth Circuit explained that a "manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger." *Id.* (quoting *Fisher,* 383 Mich. 158, 174 N.W.2d 752 (1970)). However, because the press is not a simple tool, the manufacturer's duty to protect operators of open and obvious dangers is not obviated in design defect claims. In *Glittenberg,* 441 Mich. 379, 393, 491 N.W.2d 208 (1992), the court stated:

Our jurisprudence recognizes the well established rule that there is no duty to warn of dangers that are open and obvious. *We have also narrowed application of the no-duty rule to those cases involving "simple tools or products."* Owens v. Allis–Chalmers Corp., 414 Mich. 413 [326 N.W.2d 372] (1982). We have rejected the proposition that the "open and obvious danger" rule is an incantation that obviates the threshold inquiry of duty in design defect cases.

*Glittenberg,* 441 Mich. at 393, 491 N.W.2d 208 (emphasis added). HD argues that the open and obvious doctrine has been applied to mechanized products. However, in the three cases cited by HD for this proposition, the court applied the open and obvious doctrine to plaintiffs' failure to warn claims and not to the defective design claims. *Bullock v. Gulf & Western Manufacturing,* 128 Mich. App. 316, 340 N.W.2d 294 (1983); *Wiegerink v. Mitts & Merrill,* 182 Mich.App. 546, 452 N.W.2d 872 (1990) *lv. app. den.* (1990); *Reeves v. Cincinnati,* 176 Mich.App. 181, 439 N.W.2d 326 (1989).

### b. *Safety Device*

■■■ The plaintiffs argue that the press was defectively designed because HD did not provide a safety guard at the in-running nip point which injured plaintiff. In *Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 326 N.W.2d 372 (1982), the Michigan Supreme Court set forth the standard for determining whether a design defect exists. The test is whether the defendant used reasonable care at the time it designed or manufactured the product so as to eliminate unreasonable risks of harm or injury which were ·reasonably foreseeable. *Id.* at 429–32, 326 N.W.2d 372. In *Prentis v. Yale Manufacturing Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984), the Michigan Supreme Court stated that "we adopt, forthrightly, a pure negligence, risk-utility test in products liability actions against manufacturers of products where liability is predicated upon defective design." *Id.* at 691, 365 N.W.2d 176.[2]

■■ Both parties present depositions and expert opinions regarding whether the press was safe when it was manufactured in 1972. Plaintiffs present the deposition of Peter Barroso, a mechanical engineering, machine design and safety consultant who states that a safety guard was available in 1972 which would have protected Inman from injury. Further, plaintiffs present several articles regarding the installation of safety guards for in-running nip points on printing presses which were available and suggested by the

literature before 1972. Plaintiffs argue that HD itself knew in-running nip points endanger press operators and must be guarded. They cite the following excerpt from the deposition of Heidelberg's design engineer:

Q: And there has always been the hazard presented by in-running nip points; correct?

A: Yes.

Q: And there has always been a risk that an operator will inadvertently be drawn into the in-running nip point if he comes in too close contact with the hazard; correct?

A: Yes.

Q: That is not new knowledge; is it, Mr. Hiltwein?

A: No.

Q: And based upon your training, your education, your experience, your dialogue with the trade association, and your knowledge of German standards, you know that there has always been the risk presented to the pressman by the hazard of in-running rollers or nip points; correct, Mr. Hiltwein?

A: Yes.

Q: For just as long as manufacturers have made presses with in-running nip points; correct, Mr. Hiltwein?

A: Yes.

Q: And you know as a good German engineer that it is logical and it makes good sense to protect the pressman from the hazard and risk presented by in-running nip points; don't you, Mr. Hiltwein?

A: Yes.

Q: And you believe. that that has always been the case; do you not, Mr. Hiltwein?

A: Yes.

Q: Very good.

Hiltwein dep. at 60–62. HD presents the deposition of Herbert Schilling, who states that the press was certified and listed by the Underwriters Laboratories, won a safety award from the Printing Industry of America

---

**2.** Defendant also argues that it had no duty to upgrade the safety devices on a printing press which was not defective when sold. That proposition is correct. *Gregory v. Cincinnati,* 202 Mich.App. 474, 509 N.W.2d 809 (1993). However, plaintiffs' contention is that the product was defective when sold.

and was approved by the German safety board. Clearly, there is a material dispute of fact as to whether the press contained a design defect.[3] Therefore, the court will not grant HD's motion for summary judgment on this claim.

### 2. *Failure to Warn/Instruct*

■ Plaintiffs allege that HD should have warned Inman that he could not check the bounce by leaning from one side of the press to the other side of the press while the press was running. To establish a prima facie case of failure to warn plaintiff must show: (1) defendant owed plaintiff a duty to warn of the danger; (2) defendant breached that duty; (3) defendant's breach was cause in fact and proximate cause of plaintiff's harm; and (4) plaintiff suffered damages as a result. *Newson v. Monsanto,* 869 F.Supp. 1255 (E.D.Mich.1994).

■ HD argues that it did not owe plaintiff a duty to warn of open and obvious dangers. In particular, HD argues that Inman was a sophisticated user and had subjective knowledge of the dangers of his actions. In *Antcliff v. State Employees Credit Union,* 414 Mich. 624, 637–38, 327 N.W.2d 814 (1982), plaintiff was injured while on a scaffold at a construction site. The Michigan Supreme Court held that a manufacturer is not required to provide instructions to an experienced operator concerning "a non-defective product lacking in dangerous propensities and a known or obvious product-connected danger." *Id.* at 639–40, 327 N.W.2d 814. Plaintiffs argue that *Antcliff* is not applicable because the scaffold in *Antcliff* was not defective. Most of the cases cited by defendant involved products which were not defective. *Bullock v. Gulf & Western,* 128

Mich.App. 316, 340 N.W.2d 294 (1983); *Ross v. Jaybird Automation,* 172 Mich.App. 603, 432 N.W.2d 374 (1988); *Wiegerink v. Mitts & Merrill,* 182 Mich.App. 546, 452 N.W.2d 872 (1990); *Aetna Casualty & Surety Co. v. Ralph Wilson Plastics Co.,* 202 Mich.App. 540, 509 N.W.2d 520 (1993); *Brown v. Drake–Willock International,* 209 Mich.App. 136, 530 N.W.2d 510 (1995). In this action, plaintiffs have presented sufficient evidence to create a factual issue as to whether the press was defective. The court must therefore determine whether HD's failure to warn plaintiff Inman, an experienced press operator, of the alleged defect in the press constitutes breach of a duty.[4]

There were two cases which the court finds relevant to its analysis in this action. In *Reeves v. Cincinnati, Inc.,* 176 Mich.App. 181, 190, 439 N.W.2d 326 (1989), the Michigan Appellate court held that plaintiff had presented sufficient evidence to create a factual issue as to whether a power press was defective and also held that the plaintiff did not have a claim for failure to place a warning of an open an obvious danger to an experienced operator. In *Wessels v. E.W. Bliss Co., Inc,* 180 Mich.App. 440, 447 N.W.2d 758 (1989), the court determined that plaintiff had provided sufficient evidence to create a genuine issue of fact as to whether defendant should have provided a safety feature to a power press. The court then held that even though plaintiff had admitted that he knew he would be injured if his hand were caught in the point-of-operation, this admission "may not amount, as a factual matter, to a full appreciation of the mechanical hazards sufficient to defeat a claim for breach of duty to warn." *Id.* at 446, 447 N.W.2d 758. The court must therefore determine whether Inman fully appreciated the hazards of the

---

3. In its motion for summary judgment, HD did not argue that plaintiffs have failed to establish a prima facie case by not providing sufficient evidence of the magnitude of foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from the accident. *See Reeves v. Cincinnati, Inc,* 176 Mich.App. 181, 187, 439 N.W.2d 326 (1989). During oral argument, HD briefly raised this issue. Clearly, plaintiffs did not have sufficient

opportunity at that point to respond appropriately. As a result, the court will not address this issue.

4. Defendant also cites *Fisher* and *Glittenberg v. Doughboy,* 441 Mich. 379, 491 N.W.2d 208 (1992), which involved simple tools and are therefore not applicable to this action. Defendant also cited *Ferlito v. Johnson,* 771 F.Supp. 196, 200 (E.D.Mich.1991), *aff'd* 983 F.2d 1066 (6th Cir.1992), which involved cotton batting.

press in the instant action.[5]

■ In this action, Inman was fully aware that if he slipped while reaching from one side of the press to the other side of the press, a total of 53½″ according to plaintiffs' expert, his arm could be crushed. In order to prevail on a failure to warn claim, plaintiffs must present evidence that the product would have been used differently had the proffered warnings been given. *Ferlito v. Johnson & Johnson Products, Inc.*, 771 F.Supp. 196, 199 (E.D.Mich.1991), *aff'd* 983 F.2d 1066 (6th Cir.1992). The following is the relevant portion of Mr. Inman's deposition:

Q: Was there ever any doubt in your mind that if you slipped and got your hand in the in-running rollers that you were going to be in big trouble?

A: No.

Q: You knew you would be hurt?

A: Yes.

Q: Did they actually even have to teach you that?

A: No ...

Q: You look at it and see?

A: Yeah.

Inman Dep at 42. On the basis of this admission, HD argues that a warning would not have changed Inman's behavior. The court finds that this experienced operator had full awareness of the dangers of checking the bounce in the manner that he checked the bounce. Even if the manual did not expressly state that press operators should only check the bounce on the side of the press nearest to where they are standing, Inman was well aware of the dangers. Plaintiffs have offered no evidence to show that Inman would have followed a manufacturer's warning not to stretch across the machine in order to check the bounce on the other side.

Therefore, the court finds that plaintiffs have failed to show that a warning by HD, or any of the defendants would have altered Inman's behavior.[6]

### 3. Defective Manufacture

In their response to Heidelberg Druckmaschinen's motion for summary judgment, plaintiffs stated that they agree to dismiss their claim of defective manufacture.

### 4. Breach of Implied Warranty

■ HD argues that it cannot be held liable for a breach of implied warranty because Inman's employer, Thomson Shore, purchased the press on an "as is" basis. It is surprising to the court that neither party addressed the effect of the *Prentis* case on this claim. In *Prentis*, the Michigan Supreme Court disapproved of instructing a jury on breach of warranty in defective design cases because "under the common law of products liability, in an action against the manufacturer of a product based upon an alleged defect in its design, 'breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements.'" *Prentis*, 421 Mich. at 692, 365 N.W.2d 176 (citations omitted). Plaintiffs have agreed to dismiss their defective manufacture claims and the court has dismissed plaintiffs' failure to warn claim. Therefore, the court must grant summary judgment on plaintiffs' implied warranty claim against the manufacturer, HD.

### B. Heidelberg Eastern's Motion for Summary Judgment

■ Heidelberg Eastern ("HE") argues that it had insufficient connection to plaintiff in this action for any legal duty to arise. Defendant argues that it may have been

---

**5.** Plaintiffs argue that *Downie v. Kent Products*, 122 Mich.App. 722, 333 N.W.2d 528 (1983), aff'd in part and rev'd in part, 420 Mich. 197 (1984) governs this action. In *Downie*, the Michigan Supreme Court affirmed the appellate court's decision that plaintiff stated a cause of action for failure to warn even though plaintiff was an experienced operator of a power press. However, in *Downie*, the plaintiff testified that she was not aware of the possibility that the press would cause the injury she suffered.

**6.** After the motions for summary judgment were argued before the court, plaintiffs filed an affidavit of Mr. Inman. Plaintiffs do not cite any authority for filing this late affidavit and plaintiffs also failed to request the permission of the court. Further, defendants would be prejudiced by this untimely submission. Therefore, the court will not consider this affidavit in determining this motion.

asked to repair the press once or twice, but it could not find any record of such service. In *Blanchard,* 84 Mich.App. 279, 269 N.W.2d 564 (1978), the court held that a directed verdict for Monical was improper even though Monical claimed that the clamp at issue was held by Monical on a consignment basis for the owner before it was sold to plaintiff. The court held that the question is whether a reasonably prudent seller of the used clamp would be expected to install a specific safety feature and this question should have been submitted to the jury. *Id.* This court therefore finds that the issues of whether HE had any duty to plaintiff and the type of duty HE had to plaintiff should be submitted to the jury.

■ HE also argues that it cannot be held liable for a breach of implied warranty because Inman's employer, Thomson Shore, purchased the press on an "as is" basis. In *Wessels v. E.W. Bliss Co., Inc.,* 180 Mich. App. 440, 447 N.W.2d 758 (1989), the court held that even though a press was sold to plaintiff's employer on an "as is" basis, this disclaimer did not necessarily foreclose a tort-based products liability claim from either negligence or common law implied warranty.[7] The court in *Wessels* relied on *Blanchard v. Monical Mach. Co.,* 84 Mich. App. 279, 269 N.W.2d 564 (1978), in which the Michigan Appellate court explained that the inclusion of "as is" language may impact on UCC warranties, but it does not relieve a defendant seller of his duty of care to plaintiff under common law. *Id.* at 284, 269 N.W.2d 564. *See also Johnson v. Purex Corp.,* 128 Mich.App. 736, 740, 341 N.W.2d 198 (1983) (also relied upon in *Wessels* ). HE relies upon *Lenawee Co. v. Messerly,* 417 Mich. 17, 32, 331 N.W.2d 203 (1982), but *Lenawee* held that when a mutual mistake had been made in a sale of land, the "as is" language suggested that the risk of mistake be allocated to the purchaser. That factual situation is different than in a products liability action. Therefore, the court finds that plaintiffs have stated a cause of action for breach of implied warranty and HE has

failed to prove to the court that there is no material dispute of fact as to this claim.

■ HE also argues that MIOSHA absolves HE of liability by placing all the liability for safety on employers and employees. Although employers and employees are subject to MIOSHA regulations, HE has failed to cite a single case in which the liability of a manufacturer or seller of a product was precluded by MIOSHA. In *Wessels* and *Blanchard,* MIOSHA did not preclude products liability actions against manufacturers and sellers of products even though both cases were decided after the adoption of MIOSHA. Further, in *Shipman v. Fontaine Truck,* 184 Mich.App. 706, 713, 459 N.W.2d 30 (1990), the court found that "where there is evidence presented ... that unsafe use is foreseeable, liability is not precluded" even if the employer committed a safety violation under MIOSHA. *Id.* at 713, 459 N.W.2d 30. Therefore, the court will not grant HE's motion for summary judgment.

Plaintiffs' response requests Rule 11 sanctions against defendant HE for bringing this frivolous motion. The court finds that sanctions are not necessary and therefore denied plaintiffs' request.

## C. EAC USA's Motion for Summary Judgment

In its motion for summary judgment, defendant EAC USA alleges that its sole connection to this case is the fact that defendant Heidelberg Eastern was its wholly owned subsidiary. Plaintiffs argue that EAC USA is the current entity that used to be known as Heidelberg Eastern and is not the parent corporation of Heidelberg Eastern. There is clearly confusion as to whether EAC USA, the defendant making this motion for summary judgment, is the same EAC USA which is known as Heidelberg Eastern. Therefore, the court is unable to make a determination at this time that summary judgment is appropriate. The court invites the parties to file more extensive briefs on this issue. Also,

---

7. HE cited *Kueppers v. Chrysler Corp.,* 108 Mich. App. 192, 310 N.W.2d 327 (1981) for the proposition that a sale on an "as is" basis does foreclose a claim for common law implied warranty.

However, *Kueppers* and *Wessels* are both Michigan Court of Appeals decisions and *Wessels* is the later decision. Therefore, the court will follow *Wessels.*

if further discovery is necessary, the court will consider reopening discovery on this limited issue for a limited time if plaintiffs make such a request.

### D. Defendant Heidelberg USA also known as Standby USA's Motion for Summary Judgment

Defendant Heidelberg USA also known as Standby USA ("defendant") argues that it did not have any connection to the manufacture, design service or warranty of the press. In its motion for summary judgment, defendant alleges that some years after Heidelberg Eastern sold the press it went out of business and sold some of its assets to Heidelberg USA. During the process of incorporation, Standby USA was created. According to defendant, Standby was a dormant corporation which never engaged in any business.

Plaintiffs argue that Heidelberg USA was properly served, properly answered, and vigorously participated in the defense of this action. Defendant does not contest plaintiffs' argument. However, defendant contends that plaintiffs failed to name the correct party because "Heidelberg USA a/k/a Standby USA ('Standby') has a corporate identity that is entirely separate from that of Heidelberg USA." Defendants' reply, at 1.

There is clearly confusion as to whether Heidelberg USA a/k/a Standby USA, the defendant making this motion for summary judgment, is the same entity as Heidelberg USA. Therefore, the court is unable to make a determination at this time that summary judgment is appropriate. The court invites the parties to file more extensive briefs on this issue. Also, if further discovery is necessary, the court will consider reopening discovery on this limited issue for a limited time if plaintiffs make such a request.

### *ORDER*

Therefore, it is hereby **ORDERED** that defendant Heidelberger Druckmaschinen AG's motion for summary judgment is **DENIED** with respect to plaintiffs' defective design claim and loss of consortium claim.

It is **FURTHER ORDERED** that defendant Heidelberger Druckmaschinen AG's motion for summary judgment is **GRANTED** as to plaintiffs' failure to warn/instruct claim, defective manufacture claim, and breach of implied warranty claim.

It is **FURTHER ORDERED** that defendant Heidelberg Eastern's motion for summary judgment is **DENIED** with respect to plaintiffs' breach of implied warranty claim and loss of consortium claim.

It is **FURTHER ORDERED** that defendant Heidelberg Eastern's motion for summary judgment is **GRANTED** with respect to plaintiffs' defective manufacture claim, defective design claim, and failure to warn/instruct claim.

It is **FURTHER ORDERED** that defendant EAC USA's *motion for summary judgment* is **DENIED** without prejudice with respect to plaintiffs' breach of implied warranty claim and loss of consortium claim.

It is **FURTHER ORDERED** that defendant EAC USA's motion for summary judgment is **GRANTED** with respect to plaintiffs' defective design claim, defective manufacture claim, and failure to warn/instruct claim.

It is **FURTHER ORDERED** that defendant Heidelberg USA also known as Standby USA's motion for summary judgment is **DENIED** without prejudice with respect to plaintiffs' breach of implied warranty claim and loss of consortium claim.

It is **FURTHER ORDERED** that defendant Heidelberg USA also known as Standby USA's motion for summary judgment is **GRANTED** with respect to plaintiffs' defective design claim, defective manufacture claim, and failure to warn/instruct claim.

**SO ORDERED.**

### *PARTIAL JUDGMENT*

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered,

It is **ORDERED** and **ADJUDGED** that plaintiffs take nothing on their second amended complaint on plaintiffs' failure to

**1164**

warn/instruct claims against all defendants and that these claims are **DISMISSED** on the merits.

It is further **ORDERED** and **ADJUDGED** that plaintiffs take nothing on their second amended complaint on plaintiffs' defective manufacture claims against all defendants and that these claims are **DISMISSED** on the merits.

It is further **ORDERED** and **ADJUDGED** that plaintiffs take nothing on their second amended complaint on plaintiffs' breach of implied warranty claim against defendant Heidelberger Druckmaschinen AG and that this claim is **DISMISSED** on the merits.

It is further **ORDERED** and **ADJUDGED** that plaintiffs take nothing on their second amended complaint on plaintiffs' defective design claims against defendants Heidelberg Eastern, EAC USA, and Heidelberg USA and that these claims are **DISMISSED** on the merits.